In re Tommy Joe **ROSEL**, Naomi Rosel, Debtors.

**FIRST HARDIN NATIONAL BANK & TRUST, Plaintiff,**

v.

Tommy Joe **ROSEL**, Naomi Rosel, Defendants.

Bankruptcy No. 3–83–00839.
Adv. No. 3–83–0232.

United States Bankruptcy Court, W.D. Kentucky.

Aug. 5, 1986.

Helen Lucier, Louisville, Ky., Glay E. Maggard, Munfordville, Ky., for plaintiff.

S. Albert Phillips, Louisville, Ky., for defendants.

## MEMORANDUM OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the court pursuant to remand from the United States

District Court with directions to apply a clear and convincing standard in determining whether the debt due the plaintiff-creditor by the debtor is nondischargeable pursuant to 11 U.S.C. 523(a)(2)(B). *In re Martin,* 761 F.2d 1163, 1165 (6th Cir.1985); *In re Stephens,* 26 B.R. 389 (Bankr.W.D.Ky. 1983).

While the Amended Complaint does not specifically denote the precise section of Section 523 relied upon in support of this claim for relief, it narratively alleges facts most closely descriptive of 11 U.S.C. 523(a)(2)(B) which reads as follows:

Section 523. Exceptions to discharge.

(a) A discharge under Sections 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

It is unquestioned that the amount here in dispute is the sum of $7265.72, the balance due on the date this Chapter 7 petition was filed, and resulting from a $7500.00 loan application made and approved on July 12, 1982. The creditor alleges this loan was approved in reliance on a financial statement given the bank by the debtor dated January 22, 1982 which was materially false by understating the debtor's debts $20,000.00, his income $21,000.00, and overstating his assets $20,000.00.

It was established at the trial that the debtor-creditor relationship between these parties arose prior to 1966, and continued thereafter in a series of loans and repayments in the intervening years until December 19, 1980, at which time a consolidation loan for $3500.00 was made.

In July, 1981 an updated financial statement was submitted by the debtor covering this consolidation loan. On January 22, 1982 a further updated financial statement was submitted covering this outstanding loan. No new loan was made or approved at that time, this latest financial statement being furnished solely for the purpose of updating the current file. The information contained thereon was placed on the statement by the bank manager from data orally furnished and then signed by the debtor. It is further admitted that the debtor's stated values given and reflected on this statement were estimates as to the real property values of several tracts of land and were so recognized by the bank manager inserting these dollar amounts on the statement. This official further testified that the income reflected thereon was comprised of the debtor's $27,000.00 annual salary as a Kentucky State Trooper and $16,000.00 income from farming. No clarification as to whether this farm income was projected as gross or net was asked.

On July 12, 1982, during the absence of this bank official, the debtor visited the bank and applied for the $7500.00 additional loan here in question. The employee processing this application testified the debtor orally reaffirmed the accuracy of the January 22, 1982 financial statement. Approval was then obtained telephonically from the Vice-President at the Main Office of the bank, who inquired of the employee processing the loan only as to the net worth reflected thereon.

The creditor bank alleges that the financial statement dated January 22, 1982 was materially false in that the actual income of the debtor was understated $21,000.00, the debts understated $20,000.00 and the assets overstated $20,000.00; that the debtor knew said amounts were incorrect and intended to deceive the bank in these respects on July 12, 1982 when applying for the $7500.00 loan; and, in fact, the bank did so rely upon the debtor's false financial statement of January 22, 1982.

It is well-settled that the party seeking an exception from discharge under Section 523(a)(2)(B) has the burden of proof by clear and convincing evidence. *In re Martin, supra.* It is further required that all elements set forth in Section 523(a)(2)(B) must be established for a determination that the debt is nondischargeable. *In re Valley,* 21 B.R. 674,679 (Bankr.Mass.1982).

■ It is the opinion of the court, and it does here specifically find, that the financial statement dated January 22, 1982 was not materially false either at the time of preparation and execution, or on July 12, 1982, when the subsequent loan was approved. The property values there stated were estimates by the debtor and so recognized by the bank manager when given. The income from farming was not identified as gross or net, but were projections by the debtor for the current year which did not, in fact, materialize. As to the understated debts, the debtor at trial offered his explanation as to the constantly changing debts subsequent to January 22, 1982. While valuations on the financial statement may be capable of differing interpretations, such ambiguities where present do not constitute a materially false statement, where, as here, the creditor at the time of preparation and acceptance does not take sufficient care to clarify or expressly require a disclosure of the standard forming the basis upon which the stated values were determined.

■ The court further finds that the debtor did not publish the financial statement of January 22, 1982 with intent to deceive. His testimony that the stated values were estimates is uncontroverted. Additionally, his stated income from farming was neither questioned as to attendant expenses nor challenged by the bank manager that his asserted income was based on projected gross income. As noted in *In re Hunter,* 780 F.2d 1577 (11th Cir.1986), in the absence of an affirmative false representation, the debtor's failure to disclose material facts does not constitute the kind of fraud or other conduct that makes a debt nondischargeable under Section 523(a)(2).

The crucial question of whether the January 22, 1982 financial statement was expressly and orally ratified by the debtor on July 12, 1982 is controverted. The processing employee testified that this question was expressly asked the debtor who responded there had been no intervening change in his financial condition. The debtor testified, however, that this January 22, 1982 statement was never shown him at that time and the employee only questioned as to whether a current statement was on file.

■ Finally, the court finds that the creditor did not reasonably rely on the financial statement of January 22, 1982 when approving the $7500.00 loan on July 12, 1982. No elaboration, clarification, or explanation was requested by the bank at any time as to the debtor's stated income, nor were the debtor's tax returns requested for verification of past income derived from farming activity, thereby establishing a historical foundation upon which to validate future projections. Additionally, no effort was made by the bank to check the accuracy of the balance reflected thereon as due the bank on the existing December 19, 1980 loan, which balance was, in fact, likewise understated. In like fashion, no effort was expended to verify in any form the accuracy or existence of other listed debts, nor was reference had to the financial statement of July, 1981, then on file, to analyze any changing debt or asset patterns, or to verify the continued existence of these previously disclosed debts and assets. Great reliance on the debtor's credit worthiness was placed on the bank's seventeen (17) year credit history with this debtor by the bank manager on January 22, 1982 as well as the Kentucky State Police honor code.

The Vice-President approving the July 12, 1982 loan, never discussed this application with the debtor but relied upon a telephone conversation with the processing employee, even though a copy of the July, 1981 and January 22, 1982 financial state-

ments were on file in the main office. He likewise stated that the history of past dealings is given great weight in approving loans, which in this case demonstrated a satisfactory and current relationship extending over seventeen (17) years.

This Court is not unmindful of the rationale set forth in *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490 (6th Cir. 1986) wherein a creditor's reliance on a false financial statement was deemed reasonable where the debtor's past credit history gave credibility to the contents of the statement. *Knoxville, supra,* however, is distinguishable from the case at bar in that here the credit history and relationship formed a separate and independent factor upon which the bank relied rather than a collateral source lending credibility to the financial statement.

Simply stated, the creditor has failed to demonstrate by clear and convincing proof that it reasonably relied on the financial statement of January 22, 1982 or July 12, 1982 rather than its past credit history with the debtor, or that reasonable prudent inquiry was made as to the validity of the information contained therein, even as to "in house" data readily available.

Based on the totality of the testimony given at trial, the documents introduced into the record, with opportunity to view the witnesses, the court finds that the plaintiff-creditor has failed to carry its requisite burden of proof that the financial statement of January 22, 1982 was materially false, that the debtor caused same to be issued or published with intent to deceive either on January 22, 1982 or July 12, 1982; or that the creditor reasonably relied upon said statement in approving the $7500.00 loan on July 12, 1982.

While the Complaint as amended seeks to have the debt of July 12, 1982 adjudged nondischargeable pursuant to 11 U.S.C. 523(a)(2)(B), it must be specifically noted that the Bank throughout these proceedings has insisted that this loan was approved in reliance on the financial statement dated January 22, 1982. In this respect, Naomi Rosel, a joint petitioner with her husband, Tommy Joe Rosell, did not execute the financial statement of January 22, 1982 and allegedly relied upon by the Bank. While she was a co-applicant for the loan on July 12, 1982, no proof was offered as to her intent in so applying, nor that the Bank in any manner relied upon her representations. Additionally, no issue was certified in this appeal contesting this Court's appealed Order denying the creditors' complaint for relief and a determination of nondischargeability of the debt due from Naomi Rosel.

The above constitutes Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. A separate order consistent herewith will be entered this date.