**In re Robert DENKLER and Clara Denkler, Debtors.**

**FIRST BANK OF CASTLE ROCK, COLORADO, Plaintiff,**

v.

**Robert DENKLER and Clara Denkler, Defendants.**

**Bankruptcy No. 86–27934–B.**
**Adv. No. 87–0064.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

Nov. 3, 1987.

Ray Blakney, Memphis, Tenn., for debtors.

Tommy L. Fullen, Memphis, Tenn., for First Bank.

### MEMORANDUM OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

WILLIAM HOUSTON BROWN, Bankruptcy Judge.

The instant core proceeding [1] came on to be heard on October 19, 1987. The issue for judicial determination is whether the debt to the First Bank of Castle Rock, Colorado, is dischargeable under § 523(a)(2)(B).

The pertinent facts alleged in the amended complaint are that the plaintiff, First Bank of Castle Rock ("Bank"), extended credit to the Debtors Robert and Clara Denkler ("Debtors") in the amount of $16,-417.26, and that the Debtor, Robert Denkler, furnished a written financial statement dated October 29, 1985, "reflecting a net worth in excess of $173,500.00". It was further alleged that the statement was materially false due to the omission of numerous debts totaling $35,690.14. The Debtors are charged with publishing the said financial statement knowing the same to be "false and misleading" and "with the intent to deceive the Plaintiff".

The Debtors answered the amended complaint admitting that Robert Denkler furnished "the plaintiff with a hastily prepared financial statement dated October 29, 1985", but denying that the Bank reasonably relied thereon and denying that the statement was provided with intent to deceive.

Based upon the statements of counsel, the deposition testimony of Marla Miles, a bank officer of the plaintiff Bank, the testimony of Robert Denkler, documentary evidence introduced with the Miles' deposition, and the entire case record, the Court makes the following findings of fact and conclusions of law, as required by Bankruptcy Rule 7052.

Marla Miles, an executive vice president with the plaintiff Bank, had authority to make the loans in question involving the Debtors. Bank loan policy required that she have "a current financial [statement] within the last year on reviewing credit". The written financial statement submitted by and signed by Robert Denkler on October 29, 1985, was requested by Ms. Miles because "of the amount of unsecured credit that he [Robert Denkler] had out at the time".

---

1. 28 U.S.C. § 157(b)(2)(I)

■ There is no proof that the Debtor, Clara Denkler, signed the October 29, 1985 financial statement, nor did she participate in its preparation. Therefore, as to Clara Denkler, the entire debt is dischargeable.

■ The financial statement reveals total unsecured debt of $15,500.00. The Bank's written policy was that unsecured credit should not exceed ten percent of a borrower's net worth. The unsecured debt revealed on the subject financial statement did not exceed ten percent of that statement's net worth of $173,500.00. Ms. Miles testified that she relied on the financial statement for an extension and/or renewal of existing credit. The Debtor, Robert Denkler, testified that he gave the statement to Ms. Miles, who merely thanked him and placed the statement in a file. Ms. Miles further testified, in cross examination, that the purpose for the statement "was to support outstanding credit" at the Bank. The obtaining of an annual statement was obviously a routine request by the Bank.

Mr. Denkler had a credit history with the Bank extending approximately twelve years prior to 1985, which credit included a Mastercard, Visa, cash reserve on checking and unsecured notes. Ms. Miles testified that she was unaware of approximately $35,000.00 in unsecured debt which the Debtor, Robert Denkler, admitted was omitted from the financial statement. The Bank officer further testified that had she been aware of this unreported debt, she would have cancelled the unsecured line of credit and asked the Debtors to secure the balances due or to pay the balances in full.

Mr. Denkler's only explanation for the omission of the thirteen creditors in excess of $35,000.00 is that he prepared the statement in haste. However, his testimony was that he took the bank form to his automobile and worked on it for approximately thirty minutes. The printed statement form has relatively few written entries by Mr. Denkler, certainly not enough to explain thirty minutes effort by this debtor. Of significance is that the Debtor revealed $14,000.00 cash in the Dover Elevator Savings Plan; yet, one of the omitted debts is to Dover Credit Union for $2,307.39. This Debtor's explanation of the omission of such a large amount of debt, which included an $8,777.00 debt to a law firm and an $8,353.37 debt to another bank is not plausible.

§ 523(a)(2)(B) excepts from discharge any debt—

"(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

"(B) use of a statement in writing—

"(i) that is materially false;

"(ii) respecting the debtor's or an insider's financial condition;

"(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

"(iv) that the debtor caused to be made or published with intent to deceive;"

The court has no problem finding that the Debtor, Robert Denkler, issued a financial statement, in writing, that it was materially false, that it respects Robert Denkler's financial condition, and that the Debtor, Robert Denkler, issued the statement with intent to deceive. The intent is found in the gross recklessness of this Debtor in his omission of so many debts, including debts which certainly would have been recalled if the debtor in fact took thirty minutes to complete the statement, as he testified. *See In re Martin,* 761 F.2d 1163 (6th Cir.1985). *See also, Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490 (6th Cir.1986).

■ However, all of the elements of § 523(a)(2)(B) must be present to deny discharge under that section of the Code. The Bank, seeking an exception from discharge under this section has the clear burden of proof on all elements by clear and convincing evidence. *Knoxville Teachers Credit Union v. Parkey, supra,* at p. 491. The difficulty with the Bank's position is lack of proof of reasonable reliance by the Bank on the written financial statement, as required by § 523(a)(2)(B)(iii). While there is credible testimony that the lender required a current financial statement and it is logical to assume that the

Bank expected the statement to be accurate, that does not satisfy the requirement of reasonable reliance. This is particularly illustrated by the following: While the Bank's written policy was that unsecured credit should not exceed ten percent of the net worth, the Bank always discounted household furniture in calculations of net worth. If that policy is followed on the statement as issued, $52,000.00 of furniture value would be deleted, leaving a net worth of $121,000.00. At this point, the revealed debts of $15,500.00 would constitute in excess of twelve percent of net worth. The Bank agrees to that conclusion in Exhibit 1 to Ms. Miles deposition. In fact, Exhibit 1 states as follows:

"Our written loan policy at First Bank states that we do not want to lend unsecured monies to individuals in excess of 10% of their net worth and a more prudent figure is 5%."

Of the $15,500.00 in revealed unsecured debt, approximately $15,000.00 was owed to this Bank. If, as Ms. Miles testified, the financial statement was requested because of the amount of unsecured credit extended to Robert Denkler, the Bank should have noticed that the unsecured credit exceeded its ten percent policy. As Ms. Miles candidly admitted, after taking the statement, no further credit investigation was done by the Bank until the filing of this bankruptcy case under Chapter 7. No significant new credit was extended after the date of the financial statement, although Mr. or Mrs. Denkler did incur approximately $1,600.00 more in Mastercard and Visa charges after that date, and it is unclear how much of that amount is interest charges.

The Bank's primary argument is that had it known on October 29, 1985, of the falsity of the statement, the Bank would have employed various options, including demand, suit or other collection efforts. A lender may certainly rely on a financial statement and, as a result, may lose certain remedies; however, the forfeiture of possible remedies is not a substitute for reasonable reliance at the time of the statement's issuance. For example, the Bank asserts that one possible remedy would have been the obtaining of security in the equity in the Debtors' home, which on the financial statement was shown at $135,000.00. However, reasonable reliance would require inquiry into whether that equity in fact existed. Between the statement date and June of 1986, the equity disappeared, the testimony being that the property was foreclosed, with a deficiency remaining.

The undisputed proof is that the Debtors continued to be current with the Bank until the bankruptcy filing. That fact, coupled with the credit history of the Debtors at First Bank, indicates that the Bank in fact relied upon credit history rather than the October 29, 1985, financial statement.

The Sixth Circuit has held in *In re Martin*, 761 F.2d 1163 (1985) that the element of reasonable reliance is not "a rigorous requirement, but rather is directed at creditors acting in bad faith". 761 F.2d at 1166. However, the *Martin* court went on to note that the determination of reasonableness is made in light of evaluation of all the facts and circumstances of each case. In both the *Martin* and *Parkey* cases, *supra*, the court observed that the lender had no reason to question the debtor's false statement, in light of the debtors' prior financial dealings with the lender. 790 F.2d at 492–493. The same would be true here, except for the fact that the lender's written policy defeats the Bank's assertions of reasonable reliance. That is, the Bank's policy of not lending unsecured money in excess of ten percent of net worth is in direct conflict with the Bank's assertion of reliance on this statement, which, despite being false in some respects, nevertheless did reveal that the Debtor's unsecured debt to this Plaintiff Bank alone exceeded the ten percent factor after deduction of the furniture.

■ However, as in *Martin* and *Parkey*, the Bank was entitled to refer to its prior credit history with this debtor. This court concludes that the reasoning of *In re Rosel*, 63 B.R. 603 (Bankr.W.D.Ky.1986), is applicable, wherein the *Rosel* court distinguished *Knoxville Teachers Credit Union v. Parkey*, *supra*. As in *Rosel*, the Denkler "credit history and relationship formed a separate and independent factor upon

which the bank relied rather than a collateral source lending credibility to the financial statement" 63 B.R. at 607. This court cannot find that the Bank acted in bad faith. However, any doubt about the dischargeability must still be weighed in the balance favoring the general discharge for the *honest* debtor and the strict construction against the objecting creditor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

The proof, through the Bank's Exhibit 1 to the Miles' deposition, reflects the following amounts owing at the time of the Chapter 7 filing:

| | |
|---|---:|
| Joint cash reserve account | $ 5,238.04 |
| Joint Mastercard | 2,728.39 |
| Robert Denkler cash reserve | 4,726.71 |
| Clara Denkler cash reserve | 1,066.13 |
| Clara Denkler Visa | 2,657.99 |
| Total | $16,417.26 [2] |

However, it appears from the trial exhibits that Robert Denkler also signed the Clara Denkler cash reserve account. Assuming that to be correct, the Clara Denkler Visa account is not to be considered. With that deduction, the Bank is left with a smaller unsecured balance as to Robert Denkler than it had on October 29, 1987.

Under a totality of the facts and circumstances of this case, the Court finds that the debt of Robert Denkler to the First Bank of Castle Rock, Colorado, is dischargeable. The reckless behavior of the Debtor is not condoned; however, the Bank simply tripped over its own policies and thereby failed to convince the Court that it had reasonably relied upon the financial statement of October 29, 1985.

IT IS THEREFORE, ORDERED: That the debt owing by both Debtors, Robert and Clara Denkler is dischargeable.

2. Marla Miles testified that the balance was $16,467.26.