In re Jane Chagaris ALBANESE a/k/a d/b/a Jane Chagaris—Maple Ridge Gourmet Foods, Debtor.

FOOTE & DAVIES, Plaintiff,

v.

Jane Chagaris ALBANESE, Defendant.

Bankruptcy No. 88–3887–8P7.

Adv. No. 88–400.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 13, 1989.

Larry M. Foyle, Tampa, Fla., for plaintiff.

John H. Stewart, St. Petersburg, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case, and the matter under consideration is a claim of nondischargeability asserted by Foote & Davies (Plaintiff) in a single count Complaint under 11 U.S.C. § 523(a)(2)(B). The Complaint alleges that Jane Chagaris Albanese (Debtor) obtained money from the Plaintiff by the use of a materially false financial statement in writing with the intent to deceive the Plaintiff, and upon which the Plaintiff reasonably relied.

The facts as established at the final evidentiary hearing which are germane and relevant to the claim asserted by the Plaintiff are as follows:

At the time relevant to this controversy, the Defendant was the president and sole owner of a Florida corporation known as Maple Ridge Gourmet Foods, Inc (Maple Ridge). The Plaintiff, Foote & Davies (Plaintiff), is a corporation engaged in a general printing business including printing catalogues for mail-order houses and the like. Sometime in the early summer of 1987, one of the Plaintiff's sales persons contacted the Defendant and discussed the possibility of printing a catalogue for Maple Ridge. Thereafter, the salesman prepared a request for credit approval stating the approximate billing total to be $40,000.00 (Plaintiff's Exh.No. 1). The request for credit approval indicated several bank references and also some trade references. Upon receipt of the request for credit approval, the Plaintiff commenced to conduct an inquiry on the credit worthiness of Maple Ridge and requested a credit report from Dunn & Bradstreet, Inc. (D & B), on the financial status of Maple Ridge. In due course, D & B transmitted the report to the Plaintiff (Plaintiff's Exh.No. 2). On July 28, 1987, the Plaintiff received the D & B report which indicated that Maple Ridge was financially unbalanced, and that it actually had a negative net worth in that its liabilities substantially exceeded its current assets by $58,677.00. Upon a review of the D & B report, a senior vice-president of the Plaintiff requested that the Debtor execute a personal guaranty and furnish a personal financial statement as a condition precedent to the approval of a credit line. The Plaintiff claims it was unwilling to extend a credit line to Maple Ridge in light of the unfavorable report by D & B. The Debtor responded to the request by a letter dated July 31, 1987 (Plaintiff's Exh.No. 3), which stated that the letter would operate as her personal guaranty for the September 1987 printing of a new catalogue in the quantity of 300,000 copies at a quoted price of $35,020.00, plus mailing. The Debtor offered to pay a $10,000.00 down payment and to pay the balance in equal monthly payments on a 36[sic]–60 day period from the date of the invoice. In her letter she stated she had cash on hand in the banks in the amount of $55,000.00, and that the av-erage balance on these accounts was $26,000.00. In addition she listed the following assets:

| | |
|---|---|
| Real estate | $ 80,000.00 |
| with a mortgage of $54,000.00 | |
| Other personal property | 57,000.00 |
| Cash Value on life insurance | 15,000.00 |
| Inheritance (approximate) | 600,000.00 |
| 50% ownership in Linwood Travel | 55,000.00 |
| Total assets in TOTAL amount of | $807,000.00 |

Shortly thereafter on August 3, 1987, the Plaintiff requested a signed formal personal guaranty, and in addition a financial statement on the form used by the Plaintiff in its business. It appears that on August 4 in an in-house memorandum, the senior vice-president who appeared to have the only authority to approve credit, indicated that the new account, i.e., the account with Maple Ridge would be approved if the financial statements were o.k. (Plaintiff's Exh.No. 5). The Plaintiff received a personal financial statement from the Debtor indicating that it represented the assets and liabilities of the Debtor as of August 6, 1987 (Plaintiff's Exh.No. 6), but which was signed on August 10, 1987. This financial statement was signed by the Debtor not only on the first page, but also on the second page, and included among the assets the following items: inheritance.... $600,000.00; gold bullion ... $40,000.00. The Plaintiff also received, together with the personal financial statement, the personal guaranty which was signed by the Defendant on August 6, 1987 (Plaintiff's Exh.No. 7). According to the office memorandum in evidence (Plaintiff's Exh.No. 8) addressed to the senior vice-president, the personal guaranty had been received, along with an updated financial statement which appeared to be satisfactory for a credit line up to $40,000.00. It is without dispute that the credit line was approved and that the Plaintiff did, in fact, print the catalogues for Maple Ridge pursuant to the original quote. According to the statement sent by the Plaintiff to the Debtor, Maple Ridge did make payments on the account, but as of June 30, 1988, there was an outstanding balance which still remains unpaid in the amount of $17,686.45. This is the amount for which the Plaintiff seeks a declaration

that it represents a nondischargeable liability.

The voluntary Petition for Relief was filed by this Debtor on July 11, 1988. A list of personal properties of the Debtor fails to make any reference to the gold bullion. Nor is there any reference to the so-called inheritance stated to be worth $600,000.00, or any disclosure of any interest of hers in any insurance policies. It is without dispute that the Debtor never owned any gold bullion. Although she claims that she signed the financial statement without reading it, she did answer a question at the bottom of Page One in her own handwriting immediately above her signature (Plaintiff's Exh.No. 6). The Debtor claims that the insertion of the gold bullion as one of her assets was done by her accountant without her consent. While she stated that the accountant lives in the area, she professed not to know his address and that, therefore, he could not be subpoenaed for trial to testify. As to her inheritance, there is no question that her inheritance is merely a residuary interest on a testamentary trust under which her mother, a person aged 72 and in good health is the primary beneficiary. She did not at the time she executed the financial statement have a vested interest in the last will and testament valued at $600,000.00. In an attempted explanation of the $57,000.00 worth of personal properties stated in her letter dated August 2, 1987 (Plaintiff's Exh.No. 3), the Debtor stated that the amount referred to the value of a 1986 Cougar which, according to her, was valued at $17,000.00. She admitted that the balance included the assets of Maple Ridge and not her personal assets in spite of the fact that her letter stated that it represented her personal guaranty and her personal assets, not those of the corporation.

In defense of these allegations, the Debtor in her answer to the Complaint claims to be suffering from dyslexia and claims that it was the dyslexia that caused her to sign the personal financial statement without reading it. However, at the final evidentiary hearing, the Debtor put on no evidence of dyslexia nor was it ever mentioned. The Debtor gave no explanation for her decision to sign the personal financial statement without reading it. When asked how she had answered the question, "Do you have a will?" at the bottom of Page One of the personal financial statement, the Debtor then admitted that she had read only parts of the form and that she did, in fact, read and sign that part. She presented no evidence, however, as to how she decided on which parts to read and which parts to selectively ignore.

Basically, these are the facts as established at the final evidentiary hearing on which the Plaintiff claims that the debt owed to the Plaintiff by this Debtor shall be declared to be nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code which provides in relevant portion as follows:

> § 523. EXCEPTIONS TO DISCHARGE
> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (B) use of a statement in writing....

In order for a creditor to prevail under § 523(a)(2)(B), it is sufficient for a creditor to establish that there was a false financial statement made, with actual intent to defraud on which the lender relied and that the reliance was reasonable. There is no question that the personal financial statement submitted by the Debtor was materially false. The Debtor admitted that she had never owned any gold bullion and that the inheritance was contingent upon the death of her mother. The Debtor who has a history of prior business experience, including part-ownership in a travel agency, cannot be said to lack business experience necessary to properly fill out a financial statement.

Although the Plaintiff was unable to provide direct proof of the Debtor's intent to deceive, evidence of intent may be inferred from surrounding circumstances. Thus, it is sufficient to show that a false representation on the financial statement

was made with actual knowledge that it was incorrect, or that it was made with reckless indifference and disregard of the actual facts which were readily available. *Morimura, Arai & Co. v. Taback,* 279 U.S. 24, 33, 49 S.Ct. 212, 215, 73 L.Ed. 586 (1979). Although the Debtor claims that her accountant was responsible for the inclusion of $40,000.00 worth of gold bullion on the financial statement, his absence at trial indicated otherwise. It is noteworthy that the accountant who should have been subject to subpoena and possibly would have been available to testify to corroborate the Debtor's testimony was not called as a witness by the Debtor. Under these circumstances, the law presumes that his testimony would have been adverse, and that is the reason that he was not called. It is a well-settled rule that if a party knows the existence of an available witness on a material issue and such witness is within his control and if, without satisfactory explanation he fails to call him, an inference may be drawn that the witness would not have been favorable to such party. *Culbertson v. The Steamer Southern Belle,* 59 U.S. (18 How.) 584, 15 L.Ed. 493 (1856); *Southern Cross Steamship Co. v. Firipis,* 285 F.2d 651 (4th Cir.1960); 29 Am.Jur.2d Evidence, Section 180.

As to the question of whether or not the Debtor intended to deceive the Plaintiff, the Court may look to the totality of the evidence to infer her intent. The testimony of the Debtor that she did not read the personal financial statement, but signed it anyway is not worthy of belief. Regardless, even if the Debtor did, in fact, execute the forms without reading them, then without doubt she acted recklessly and negligently. In *In re Anderson,* 10 B.R. 607 (Bkrtcy.S.D.Fla.1981), the Court held that if the debtor did not read an application containing financial information which he signed, then he acted with such reckless disregard that it could be found that he acted fraudulently, and the related indebtedness was accordingly nondischargeable. There is absolutely no doubt that whether or not the Debtor herself intended to list $40,000.00 in gold bullion to induce the Plaintiff to extend credit to her,

she allowed those representations to be made on her behalf is without significance, and in either event, the Defendant bears the responsibility for a patently false financial statement. The representations concerning her assets, liabilities and net worth were clearly knowingly and fraudulently made, and were reasonably relied upon by the Plaintiff in extending credit to the Debtor. The totality of the evidence admits no other conclusion but that the Debtor *did* have the requisite intent to deceive the Plaintiff, and thus, this Court is satisfied that the Plaintiff has met its burden of proof to establish all requisite elements of a claim on nondischargeability under § 523(a)(2)(B).

A separate Final Judgment will be entered consistent with this Opinion.