In re Marvin Dale CARTER and Linnie Elaine Carter, Debtors.

COMMERCIAL CREDIT PLAN, INC., Plaintiff,

v.

Marvin Dale CARTER and Linnie Elaine Carter, Defendants.

Bankruptcy No. 88–00777.
Adv. No. 88–0066.

United States Bankruptcy Court, E.D. Oklahoma.

Feb. 28, 1989.

David Hoel, Tulsa, Okl., for plaintiff.

Michael Kelly, Muskogee, Okl., for debtors.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On January 20, 1989, this Court conducted a Trial on the Complaint in the above referenced adversary. Appearances at the Trial were entered by Mr. David Hoel on behalf of Commercial Credit Plan, Inc. (Plaintiff) and by Mr. Michael Kelly for the Debtors, Marvin Dale Carter and Linnie Elaine Carter (Defendants).

At the conclusion of the hearing, the Court afforded the parties the opportunity to submit post-Trial proposed Findings of Fact and Conclusions of Law. These pleadings were received from both parties on a timely basis by February 6, 1989.

After review of the evidence, the arguments of counsel and the applicable law, we FIND:

## FINDINGS OF FACT

1. This matter is a "core" proceeding as envisioned by 28 U.S.C. § 157(b). This Order is issued in compliance with Bankruptcy Rule 9021 and Rule 52 of the Federal Rules of Civil Procedure.

2. On September 16, 1987, the Defendants entered into a Promissory Note with the Plaintiff in the principal amount of $6,297.28, a portion of which was a rollover from a prior account.

3. The Defendants made application for the loan from the Plaintiff by telephone on September 10, 1987. An employee of the Plaintiff completed the form application. The application itself was not signed until September 16, 1987 due to the slow processing of the application and the inability of the Defendants to appear and sign the application.

4. At the time of the completion of the application, Defendant Marvin Carter was a named Defendant in a $1.5 million personal injury lawsuit stemming from injuries sustained by a patron in a fast food restaurant owned and operated by Mr. Carter. The Defendant was dismissed from the lawsuit on September 12, 1988. This lawsuit was not revealed by Defendant Linnie Carter to the representative of the Plaintiff taking the application over the telephone. This representative, however, did not request any information regarding pending litigation in which the Defendants were involved nor did the form credit application (Plaintiff's exhibit No. 1) provide a space for the listing of any such litigation to give the applicant an opportunity to reveal this information.

5. The Plaintiff conducted a credit check (Plaintiff's exhibit No. 2) which did not reveal the pending lawsuit, but did reveal three creditors which the Defendants did not list in the telephone interview. Mrs. Carter testified that the representative of the Plaintiff requested "to name some of my creditors" with which she complied. The Plaintiff investigated the Defendants' debts to these creditors and subsequently approved the loan despite the failure of the Defendants to reveal these debts. The Defendants both testified that their reason for not listing the lawsuit was that they did not consider it a debt owed since it was only contingent in nature, as well as the aforementioned fact that said information was not requested by the representative of the Plaintiff over the telephone or on the Plaintiff's credit application form.

A representative of the Plaintiff, Mr. Wade Roye, testified that the loan would not have been granted if the lawsuit had been revealed. It was the policy of the local loan office to assume the applicant would lose the lawsuit and so the loan application would be summarily denied.

6. Mrs. Carter signed the credit application and subsequently Mr. Carter did the

same. The application was completed by the Plaintiff when the parties went to sign the form and receive the money.

### CONCLUSIONS OF LAW

A. Plaintiff asserts a cause of action based on 11 U.S.C. § 523(a)(2)(B) asking this Court to determine that the debt procured pursuant to the Promissory Note is nondischargeable. This Section of the Bankruptcy Code requires the following elements to be present for this action to be sustained:

(1) The debtor obtained money, property, credit, or services;

(2) by using materially false written statements respecting the debtor's financial condition;

(3) with the intent to deceive; and

(4) upon which the creditor reasonably relied to advance the money, property, credit, or services.

All elements must be shown by the creditor by clear and convincing evidence. *Driggs v. Black*, 787 F.2d 503, 506 (10th Cir.1986). In the instant case, the parties are in agreement that the Defendants used a financial statement to obtain a loan, thus element (1) is satisfied.

■ B. *MATERIALLY FALSE FINANCIAL STATEMENTS*—A materially false financial statement is one in which there is an "omission, concealment, or understatement of any of the debtor's material liabilities." *In re Harmer*, 61 B.R. 1, 5 (Bankr.D.Utah 1984). Further, the statement must paint a substantially untruthful picture of the debtor's financial condition by misrepresenting information which would normally affect the decision on the part of the creditor to grant credit. *In re Harms*, 53 B.R. 134, 140 (Bankr.D.Minn. 1985).

■ In the case before this Court, the testimony of the Plaintiff's representative revealed that the revelation of a lawsuit of this type summarily resulted in the denial of a loan application. However, this same representative admitted that there were no written guidelines established by the Plaintiff mandating the denial if a lawsuit were

revealed. The decision is left entirely in the discretion of the local loan officer. It is not unreasonable to assume that a creditor would have need to know this information as a factor in the credit decision making process. It would appear from the testimony presented, however, that the Plaintiff was normally willing to grant a loan on the scantest of information as demonstrated by the manner in which information for the loan is taken, and the abbreviated form of the credit application. For the purposes of this element, under the totality of the circumstances, we conclude that a materially false statement was present due to the omission of the lawsuit from the credit application.

C. *INTENT TO DECEIVE*—The fundamental purpose of the intent to deceive element is to assure that only the debtor who dishonestly obtains money, property, credit, or services be punished with a denial of discharge and that the honest, though mistaken, debtor be protected. *In re Drewett*, 13 B.R. 877, 880 (Bankr.E.D.Pa. 1981). The requisite intent may be inferred from a sufficiently reckless disregard of the accuracy of the facts. *Driggs v. Black*, supra, at 506.

This Court is not persuaded nor has sufficient evidence been presented to demonstrate an intent to deceive. It is a reasonable assumption that a party who is a named Defendant in a lawsuit would not assume his guilt, knowing the facts behind the action and would thus view the claim as frivolous and not a debt. The *potential* debt was completely contingent in nature and an intent to deceive cannot be inferred from the omission of this *potential* debt on the credit application. Thus this element is not satisfied.

D. *REASONABLE RELIANCE*—The final element which a creditor must prove in order to have a debt found nondischargeable under this Section of the Bankruptcy Code is that (1) the creditor actually relied on the credit application in making the loan and (2) such reliance was reasonable under the circumstances. We are not convinced that the creditor in this case actually relied on the credit application for the granting of

the loan. The money was given to the Defendants on the same day that the application was signed with no further questions being asked of the Defendants. The Plaintiff seems to have relied almost exclusively on the credit check obtained the same day that Mrs. Carter telephoned the information for the credit application, rather than the credit application itself.

However, even if actual reliance is assumed, we cannot conclude that the Plaintiff reasonably relied on the credit application. Where the creditor's own investigation reveals the likelihood that the debtor's financial statement is false or incomplete, reliance upon the said financial information is not reasonable. *In re Smith*, 2 B.R. 276 (Bankr.E.D.Va.1980). In this case, the Plaintiff was on notice that the credit application was potentially incomplete due to the fact that the three creditors not included on the credit application were revealed by the Plaintiff's independent investigation through the credit check. At this point, reliance upon the credit application cannot be deemed reasonable. Thus, this element must also be considered unsatisfied.

E. The Defendants in this case have requested attorney's fees and costs should judgment be rendered in their favor. Such an award may be granted pursuant to 11 U.S.C. § 523(d) since the incurred obligation is a "consumer debt" as required by that Code Section and defined in 11 U.S.C. § 101(7). Where the granting of costs and a reasonable attorney's fee was mandated by this Section prior to 1984, the amendment of that year increased the discretion of the Court in such an award. Said costs and attorney's fee should be awarded "if the Court finds that the position of the creditor was not substantially justified, except that the Court shall not award such costs and fees if special circumstances would make the award unjust." 11 U.S.C. § 523(d).

"Substantially justified" is essentially a determination of whether the challenge to dischargeability was reasonable under the circumstances. A prevailing debtor must not only request that an attorney's fee be awarded, but must also allege that the creditor was not substantially justified in challenging the dischargeability of the debt. The burden then shifts to the creditor to show that the challenge was reasonable, both in law and in fact. This shifting of the burden is done because "it is far easier for the creditor to demonstrate the reasonableness of its action than it is for the debtor to marshal the facts to prove that the creditor was unreasonable." S.Rep. No. 98–65, 98th Cong., 1st Sess. 58, 59 (1983).

Thus, before this Court can make a determination on this issue, further pleading is necessary. The Defendants shall, in addition to filing a pleading in compliance with § 523(d), include the amount of the reasonable attorney fee and costs requested. This pleading should include a task breakdown of services rendered in the defense of this action. Subsequent to this submission, the Plaintiff shall be afforded the opportunity to respond to the § 523(d) request.

IT IS THEREFORE ORDERED that judgment be entered in favor of the Defendants and that the debt of $6,297.28 owed to the Plaintiff is deemed dischargeable.

IT IS FURTHER ORDERED that the Defendants submit a pleading in compliance with this Order and the Bankruptcy Code with respect to a claim under 11 U.S.C. § 523(d) no later than March 6, 1989. Further, the Plaintiff shall respond to said Motion no later than March 17, 1989. Thereafter, the Court shall issue an Order resolving this matter.