**In re Kenneth R. BARRON and Clara Barron, Debtors.**

**TEXAS AMERICAN BANK, TYLER, N.A.,**

v.

**Kenneth R. BARRON.**

**Bankruptcy No. 87–62585–S.**
**Adv. No. A–88–6111S.**

United States Bankruptcy Court, E.D. Texas, Tyler Division.

Jan. 30, 1991.

Kerry Russell, Roark & Russell, P.C., Tyler, Tex., for Team Bank and FDIC as receiver for Texas/American Bank.

Donald Ross Patterson, Tyler, Tex., for Kenneth R. Barron.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

This matter came on for trial pursuant to regular setting. When all parties were present in Court, evidence was adduced and the matter was taken under advisement. The following opinion constitutes the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and to the extent that any finding of fact is a conclusion of law or conclusion of law is finding of fact they shall be so construed. The following opinion disposes of all issues presented to the Court in this adversary proceeding.

### FACTUAL BACKGROUND

The matter before the Court is a claim by Team Bank and FDIC that certain debts of the Debtors, Kenneth R. Barron and Clara W. Barron, should be excepted from discharge pursuant to the provisions of 11 U.S.C. § 523(a)(2)(B). There is no serious disagreement about the fact that Debtors owed Team Bank and FDIC $73,599.46 as of June 19, 1990. The debt results from promissory notes dated February 26, 1987, in the original amount of $31,700.00, dated February 4, 1986, in the original amount of $25,000.00 and one dated January 20, 1987, in the original amount of $14,720.72. The note dated February 26, 1987 in the original amount of $31,700.00 was a renewal of a promissory note dated May 7, 1986, in the original amount of $30,000.00. Therefore, only $1700.00 of additional money was advanced on February 26, 1987.

At issue in this case, is the question of the accuracy of financial statements dated November 1, 1985, and a subsequent financial statement dated December 1, 1986. Plaintiff contends that the financial statements were materially false and that it has demonstrated the necessary elements contained in 11 U.S.C. § 523(a)(2)(B) so as to except from discharge the debt described above.

At the heart of the controversy is the omission by Debtor on both of the financial statements of any mention of a promissory

note in the amount of $570,000.00 that he, along with other partners in a partnership known as Data-pro executed. Plaintiff's contention is that the addition of the liability on this note to the list of liabilities on the two financial statements would have demonstrated that the Debtors were hopelessly insolvent and that no loan would have been made had the bank known of the liability.

Debtor admits the $570,000.00 obligation and it is clear that it is not shown on the financial statement. Debtor's position is, first, that the obligation was secured by a deed-of-trust on real estate and a building which had a value greater than the note and that if both the asset and liability had been shown on his financial statement it would have enhanced his financial condition rather than demonstrating an additional deficit. Second, he argues that he and the bank officer, Robert Stone, had an agreement to exclude both the asset and liability from the financial statement. The Court finds that there was no evidence of any agreement between the Debtor and the bank officer to exclude the Data-pro transaction from the financial statements.

## DISCUSSION OF LAW

■ In all cases in which a creditor is attempting to except a debt from discharge the creditor is charged with carrying the burden of proof. *Matter of Benich*, 811 F.2d 943, 945 (5th Cir.1987). Additionally, while there has been some dispute between various courts as to the appropriate standard of proof (preponderance of evidence versus clear and convincing evidence) that issue has been finally laid to rest by the Supreme Court's recent decision in *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) which categorically holds that the preponderance of the evidence standard is appropriate in all 11 U.S.C. § 523 dischargeability matters. As a consequence, this Court's opinion shall examine Creditor's 11 U.S.C. § 523(a)(2)(B) complaint using the preponderance of the evidence standard of proof.

■ The controversy in this case essentially boils down to whether or not the financial statements were materially false; whether or not the bank reasonably relied upon the financial statements in advancing credit; and whether the Debtor submitted the financial statements with intent to deceive. 11 U.S.C. § 523(a)(2)(B)(i, iii & iv). The Court observes that the financial statements at issue concern the Debtor's financial condition. 11 U.S.C. § 523(a)(2)(B)(ii). Looking first at the question of the falsity of the statements this Court can make no other finding but that the statements were materially false.

In *In re Carter*, 101 B.R. 702, 704 (Bkrtcy.E.D.Okl.1989) the court held that "A materially false financial statement is one in which there is an 'omission, concealment, or understatement of any of the debtor's material liabilities.'" quoting *In re Harmer*, 61 B.R. 1, 5 (Bkrtcy.D.Utah 1984). Case law is replete with holdings to the effect that omissions from financial statements constitute a material falsity. *In re Finley*, 89 B.R. 938, 939 (Bkrtcy.M.D. Fla.1988) (failure to list additional mortgage obligations constitutes a material falsity); *In re Kroh*, 87 B.R. 1004, 1008 (Bkrtcy.W.D.Mo.1988) (finding of material falsity in a debtor's financial statement can be based on an omission of information about the debtor's financial condition); *In re Mitchell*, 74 B.R. 457 (Bkrtcy.D.N.H. 1987).

In the instant case, the total liabilities shown on the financial statement dated November 1, 1985, was $419,532.07 and the total liabilities shown on the financial statement dated December 1, 1986, was $441,-750.00. The addition of the $570,000.00 liability in connection with the Data-pro transaction would have more than doubled the liabilities on both of the financial statements. Clearly, the omission of such a liability is a material falsity. The Debtor's argument that he would have also had the right to show the property securing the debt in the asset portion of the financial statement does not cure the falsity of the financial statements. It is clear that he was an owner of an undivided interest in the real estate at the time the obligation was incurred and his argument that he

would have been entitled to become the owner of one hundred percent (100%) if he had been called on to pay off the debt does not cure the problem of a false financial statement. That position is open to interpretation and he may or may not be right, but the essence of the financial statement is that those facts should have been revealed so that the lender could then make an informed decision about the extension of the credit. Therefore, this Court finds that the omission of the debt in connection with the Data-pro transaction renders both financial statements materially false.

■ In considerable dispute is whether or not the Creditor reasonably relied upon the financial statements in the extension of the credit. (11 U.S.C. § 523(a)(2)(B)(iii)). Exactly what constitutes "reasonable reliance" in compliance with 11 U.S.C. § 523(a)(2)(B)(iii) is not statutorily defined by the Code. Case law, however, reveals that reasonable reliance is to be objectively determined by the fact finder given the totality of the circumstances. · In re Figge, 94 B.R. 654, 665 (Bkrtcy.C.D.Cal.1988). Reliance will be found to be reasonable if it is demonstrated by the creditor that had the false representation or omission been known, the credit would not have been extended. In re Carr, 49 B.R. 208, 210 (Bkrtcy.W.D.Ky.1985). In cases of lending institutions this standard is expanded to compare the creditors' actual conduct with debtor; the industry-wide practice; and the surrounding circumstances of the case. In re Compton, 97 B.R. 970, 979 (Bkrtcy.N.D. Ind.1989); In re Pascucci, 90 B.R. 438, 446–447 (Bkrtcy.C.D.Cal.1988).

■ In this case the financial statements found to be materially false were dated November 1, 1985, and December 1, 1986. All parties agreed that they were delivered to the bank within a matter of a few days after their dates. The debts with which we are dealing were incurred on May 7, 1986, or some seven months after the financial statement of November 1, 1985, was delivered. That debt was renewed on February 26, 1987, or three months after the December 1, 1986, financial statement was delivered. Another debt was incurred on February 4, 1986, which is three months after the November 1, 1985, financial statement was delivered and the other debt was incurred on January 20, 1987, or two months after the December 1, 1986, financial statement was delivered. Clearly, none of the financial statements were delivered to the bank contemporaneously with the incurring of the debt. The financial statements were annual statements delivered to the bank on a more or less annual basis and placed in the files for the ostensible purpose of maintaining a current financial picture of the bank's customer. The bank was not able to demonstrate a direct connection between the submission of the financial statement and the incurring of the debt. Although it is not necessary that the financial statement be submitted contemporaneously with the request for credit, that is certainly some indication that the financial statement was an integral part of the lending institution's consideration of the granting of the credit. In this case that factor is absent. The bank officer testified that he relied on the financial statement along with his perception of the Debtor's ability to earn money, the long past history of a successful banking relationship and the Debtor's reputation and standing in the community. There is no requirement in the law that the false financial statement be the only thing on which the creditor relied. Regency Nat. Bank v. Blatz, 67 B.R. 88, 92 (E.D.Wis.1986). It is clear that partial reliance on a materially false financial statement is sufficient to deny the debtor a discharge from that particular debt. In re Hall, 109 B.R. 149, 154 (Bkrtcy.W.D.Pa. 1990); In re Wing, 96 B.R. 369, 373 (Bkrtcy.M.D.Fla.1989); In re Nance, 70 B.R. 318, 323 (Bkrtcy.N.D.Tex.1987).

■ The testimony of the bank official was convincing that he did consider and rely on the financial statements. These financial statements were not so remote in time from the incurring of the debt that such reliance was unreasonable. Supporting the bank officer's testimony, of his reliance on the financial statements, is an entry on the commercial loan memorandum dated May 7, 1986, indicating that the net

worth on the November 1985 financial statement had been considered. Also introduced into evidence was a document styled Loan Application dated February 25, 1987, which served the same purpose as a loan memo, and which was accepted into evidence as such, that also contains the notation of the net worth shown on the December 1986 financial statement. These documents coupled with the testimony of the bank official convinces this Court that the financial statements were relied on in part in connection with the advance of funds.

The Defendant attempted to counter this evidence with a showing of the long relationship between the Defendant and the bank official. Although this long relationship is conceded, it does not rebut the direct evidence by the bank official that the financial statement was relied on. Additionally, the Defendant attempted to show that the bank official was conversant with the Debtor's financial condition to the extent that the bank official knew of the Data-pro transaction from its inception through the date of filing bankruptcy. The Defendant's evidence simply falls short on this score. Although Defendant alleged and attempted to elicit testimony from the bank official that he was familiar with the transaction, the bank official was clear in his testimony that he withdrew from active participation in the Data-pro business enterprise in the late '70s and had no further contact with it. Defendant was not able to offer any evidence in rebuttal of this position other than his own unsubstantiated assertions.

The final requirement which must be proven before a debt can be excepted from discharge is the requirement that the debtor publish the materially false financial information with an intent to deceive the complaining creditor. 11 U.S.C. § 523(a)(2)(B)(iv). A determination of intent under this section is much like a determination of reasonable reliance; an objective standard to be determined by the fact finder. Intent to deceive may either be demonstrated by proof that the debtor acted intentionally or knowingly or in the alternative that debtor's conduct exhibited reckless indifference to the existing facts. *In re Albanese*, 96 B.R. 376, 379–380 (Bkrtcy.M.D.Fla.1989); *In re Howard*, 73 B.R. 694, 702–703 (Bkrtcy.N.D.Ind.1987). Necessarily, debtor's intent cannot be divined in a vacuum but must be viewed in light of the circumstances of the case. *In re Icsman*, 64 B.R. 58, 62 (Bkrtcy.N.D.Ohio 1986). Therefore, a "debtor's credibility is an important factor in determining whether the debtor's intent to deceive was present ..." *In re Andrews*, 33 B.R. 970, 973 (Bkrtcy.D.Mass.1983).

In the instant case, this Court, viewing Debtor's conduct in light of the totality of circumstances surrounding the submission of the materially false financial statements can come to no other conclusion than that Debtor published the materially false financial statements with intent to deceive. Proof of intent to deceive does not require the demonstration that Debtor acted with a malignant heart but only that Debtor's actions demonstrate reckless indifference to the actual facts. As previously stated, the financial statements submitted to the bank revealed liabilities averaging approximately $440,000.00. This figure is overshadowed by the omission of the $570,000.00 liability of Debtor associated with the Data-pro transaction. Alone, the substantiality of the omission demonstrates reckless indifference as to the bank. *In re Denkler*, 79 B.R. 749, 751 (Bkrtcy.W.D. Tenn.1987). Additionally, the Court is further influenced by the fact that the Debtor is an experienced attorney who is charged with "the rights and liabilities attendant to those involved in commercial transactions." *In re Icsman*, 64 B.R. 58, 64 (Bkrtcy.N.D. Ohio 1986). Finally, the Court simply does not view as credible Debtor's testimony that the Bank was aware of his liability in the Data-pro transaction or that Debtor consciously excluded the liability because its inclusion as a liability and an asset on the financial statements would have resulted in a financial wash. The combination of these factors causes this Court to find that Debtor's actions demonstrate reckless indifference to the actual facts and hence the

intent to deceive requirement for an 11 U.S.C. § 523(a)(2)(B) finding.

In summary, the Court is convinced that the officials at the financial institution relied in part on the materially false financial statements; the financial statements were filed with intent to deceive; and therefore, the debt of $73,599.46 is excepted from discharge under U.S.C. § 523(a)(2)(B).