**In re Kevin WEBB.**

**Agribank, FCB, Assignee of American Express Centurion Bank, Plaintiff,**

v.

**Kevin Webb, Defendant.**

**Bankruptcy No. 99–51582S.**

**Adversary No. 00–5009.**

United States Bankruptcy Court, E.D. Arkansas.

Dec. 18, 2000.

Joseph A. Strode, Pine Bluff, AR, for plaintiff.

Sharrock Dermott, Little Rock, AR, for defendant.

Walter Dickinson, Little Rock, AR, Chapter 7 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY DAVIES SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the trial of the adversary proceeding objecting to the dischargeability of a debt pursuant to section 523(a)(2)(B). This is a core matter, 28 U.S.C. § 157(b)(2)(I), over which the Court has jurisdiction to enter final judgment pursuant to 28 U.S.C. § 157(b)(1). Moreover, to the extent that any issue in this proceeding may be noncore, the parties have stated in their plead-ings and pretrial statements the matters in the complaint are core and thereby have consented to entry of final judgment with regard to all issues and causes of action arising out of the pleadings. 28 U.S.C. § 157(c)(2).

### I.

Kevin Webb purchased his father's farming operation and leased the land upon which to farm, conducting all transactions as a corporation, Kevin Webb Farms, Inc. In this capacity, he obtained a loan from Simmons First National Bank of Pine Bluff, and obtained credit at a supply store, Helena Chemical Company. His operations were not particularly successful, however, and Helena Chemical suspended his credit so that he had to pay cash for his purchases. In May 1999, his debts were substantial and the larger obligations included the obligation to Simmons of $130,000, a debt of approximately $180,000 to the Farm Service Agency, nearly $100,000 on a debt related to his spraying company, $4,660 for gasoline expenses and $34,400 to a farmer's supply store, and nearly $9,000 in credit card debt. In March 24, 1999, Simmons began foreclosure proceedings and Webb's attorney advised him to find a new loan source.

On the morning of May 10, 1999, while in the Helena Chemical Company, an employee, Smokey Williams, told him about a loan program called AgSmart. Under this program, Webb could obtain a loan from Agribank[1] for farming operations to be utilized as credit at the Helena Chemical Company. Williams gave Webb the one page application and explained little to him other than that it had to be filled out in Webb's individual name. The application was simple, asking for the applicant's name, social security number, the amount of the loan requested, gross income, assets, liabilities and the items securing the loan.

1. The loan was originated by American Express Centurion Bank and later assigned to AgriBank. For convenience, the court refers only to AgriBank.

Webb filled out the application immediately, requesting a loan of $50,000, providing figures "off the top of his head." Webb stated that he had $262,000 in personal income, assets valued at $340,000, and liabilities of $185,000.[2] Thus, he indicated a net worth of $155,000. He made no effort to check the figures, consult with his bookkeeper who provided him with monthly statements, or check any personal or business records. In fact, the assets and liabilities were grossly misstated. Webb's balance sheet for the month of May 1999 indicates total assets valued at $157,154 and liabilities of $372,234. Thus, at the time he filled out the application, he actually had a substantial, negative net worth of -$215,000.[3] Webb signed the final documents several days later, on May 14, 2000, including the disbursement request and authorization which expressly represented and warranted that the information was true and correct. Thus, although he had an opportunity to reflect upon and check his figures, he did not do so. In addition, in conjunction with the loan application to Agribank, Webb caused to be filled out the forms for credit at Helena Chemical Company.[4] This was done in the name of Kevin Webb Farms, Inc. rather than under his individual name.

The application was immediately sent by facsimile transmission[5] to Agribank where it was processed according to their procedures for loans made to individuals. Specifically, accepting all of the information on the application as true, the AgSmart program used a computerized scoring based upon the information contained in the application, tabulating the assets, liabilities, net worth and creating a debt exposure ratio. Applications with scores above 200 were approved for loans. Based upon this system and the information in his application, Webb obtained a score of 230. This was based upon liabilities of $115,000, rather than the $185,000 he had actually written because the numbers were unclear. This makes no difference to the result, however, because had the liabilities been read as $185,000, his score would have been 210, still within the limits for obtaining a loan.[6] However, had Webb listed his true liabilities, his score would have been below 200, and he would not have been approved for the loan. Only the information on the application was used to generate the score; had the application not been submitted or received, no score would have been generated and no loan would have been made.

## II.

AgriBank seeks judgment on the debt and a finding of nondischargeability on Kevin Webb's obligation based upon Webb's submission of a false financial statement to obtain a loan. There does not appear to be any dispute as to the liability or amount of the debt.

The Bankruptcy Code provides that a debt obtained by use of a false financial statement is not discharged in a chapter 7 case:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

---

2. This figure gives Webb the benefit of the doubt. Webb claims to have written $185,000. The figure on the application can easily be read as $115,000. Agribank understood the number to be $115,000 and calculated Webb's loan score on that figure.

3. At the time the chapter 7 case was filed, his net worth was a negative $500,000.

4. Although no one recognized the handwriting on the form, Webb dictated the content of the application. Williams testified that Webb decided the account would be in the name of Kevin Webb Farm, Inc.

5. The facsimile copy of the application contains the facsimile transmission data, including the date and time of transmission. Thus, Webb's insistence that the facsimile did not go through, that the lender utilized only his social security number to approve the loan request, or that the lender was only utilizing Webb's credit report is in error.

6. In any event, either number was false.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

    (B) use of a statement in writing—

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive* * *

11 U.S.C. § 523(a)(2)(B). The Court finds that Agribank proved all elements of the nondischargeability action. There is no dispute that the debtor obtained a loan by the use of a statement in writing respecting his financial condition. Moreover, there is no real dispute that the information on the statement was false. Indeed, even if such a dispute existed, the evidence is overwhelming that the information on the loan application was false. The parties dispute, however, the elements of materiality, actual and reasonable reliance, and the intent to deceive.

Debtor's rebuttal of the creditor's evidence on reliance and materiality focuses upon his assertion that Agribank did not, in fact, utilize the figures on his application in approving the loan. Rather, he testified, the facsimile transmission was not successful so that he merely submitted his social security number over the telephone. With this information, he asserts, the lender obtained a credit report and, minutes later, approved his loan. The testimony of the other witnesses, as well as the documentary evidence, belie these statements. First, the loan application in the possession of Agribank contains the usual transmission recordation of the data generated by facsimile transmissions. The machine-generated line on the top of the application indicates that it was sent on "5/10/1999 07:55." Moreover, the uncontroverted testimony of the representative of Agribank indicated that the loan scores were generated solely by use of the data on the application; if no application had been received, no score would have been generated and no loan would have been made. Finally, the persons present at Helena Chemical had no recollection of any facsimile transmission problems.

■ *Materiality of the Statement.* A statement is materially false if it "paints a substantially untruthful picture of a financial condition by a misrepresentation of the type which would normally affect the decision to grant credit." *Meyer v. Dygert (In re Dygert )*, 2000 WL 630833, *8 (Bankr. D.Minn. May 11, 2000). That is, the statement is material if it substantially affects the decision to extend credit. This concept, as applied to these facts, renders the statement material. Indeed, the debtor's loan application was the primary, if not the only, information upon which Agribank relied in extending the loan. Moreover, the kinds of figures submitted, a statement of income, assets, liabilities, and the existence of collateral to secure the loan, are the essential and necessary factors in the determinations of whether to grant a loan.

■ *Actual and Reasonable Reliance.* The evidence was uncontroverted that Agribank actually relied upon the statements in the loan application. The director of credit operations testified that had the application not been received, no score would have been generated and no loan given. The information on Webb's application was required before loan approval would be granted, and Agribank in fact used the information on Webb's application to generate the score. Second, it was reasonable for Agribank to utilize those figures. A Senior Credit Officer testified that the application was accepted as true. Agribank reasonably relied upon the information contained in the application because, in approving the loan, it complied with its regular, procedures and obtained what was represented to be current financial information, in writing.

In applying this objective element, *Insurance Company of North America v. Cohn (In re Cohn )*, 54 F.3d 1108, 1117 (3d Cir.1995), the context of the application process and the type of loan may also be examined. This situation is unlike that of a credit card issuer randomly approving credit based solely upon review of credit reports. It is also not similar to the situation in which a complex loan agreement is made based upon lengthy, but clearly incomplete and contradictory financial information, *cf. Guess v. Keim (In re Keim )*, 236 B.R. 400 (8th Cir. BAP 1999). Rather, Agribank was issuing a loan to an individual farmer for the purpose providing credit at a farm supply cooperative. The context is limited, the loan funds essentially restricted to the business use, and the transactions are in the ordinary course of small farming operations. Thus, the Court does not find it unreasonable that the lender, in this particular context, required only basic asset and liability information, and adhered to its policy of accepting the farmer applicant's statements as true. Agribank demonstrated that it actually and reasonably relied upon the information submitted to it by the debtor.

■ *Intent to Deceive.* Kevin Webb testified that he had no intent to deceive Agribank when he submitted the loan application. He asserts that he merely followed instructions on how to fill out the form, and openly discussed his credit problems with the personnel at the farm supply store. It is well settled that an intent to deceive does not require a debtor to have a "malignant heart." *Texas American Bank, Tyler, N.A. v. Barron (In re Barron )*, 126 B.R. 255, 260 (Bankr.E.D.Tex.

1991). Rather, intent to deceive necessarily focuses upon the objective facts and circumstances. *See Dygert* at *9. Knowledge of the falsity of the information or reckless disregard for the truth of the information satisfies the intent element of section 523(a)(2)(B), and mere unsupported assertions of honest intent do not overcome the natural inferences derived from the admitted facts. *Id.; Shaw Steel, Inc. v. Morris (In re Morris)*, 230 B.R. 352 (Bankr.N.D.Ill.1999) ("the Court cannot accept that the Debtor inadvertently omitted to mention he received benefits ... worth more than $30,000 per year."), *aff'd,* 240 B.R. 553 (N.D.Ill.1999), *aff'd,* 223 F.3d 548 (7th Cir.2000); *Barron,* 126 B.R. at 260; *First Security Bank of Fox Valley v. Ardelean (In re Ardelean)*, 28 B.R. 299, 301 (Bankr.N.D.Ill.1983) (debtor could not have "forgotten" a $50,000 liability).

The Court finds that the debtor had the requisite intent to deceive the lender when he submitted his loan application in that he knowingly inflated his assets and grossly understated his liabilities. He knew what his obligations were; he knew what his assets were. Indeed, he had just been sued on a $130,000 obligation, and he had been told by his attorney to find a new loan source. It is incredible to the Court that when filling out the loan application, he forgot all but one of his major obligations.[7] His testimony that "it didn't, you know, have to be just on the 'T', so to speak, the exact amount" indicates the lack of regard for the transaction. Moreover, his assertion that he did not believe that Agribank would rely upon his information was not only unreasonable, but also incredible. The fact that he represented to the

---

7. While he at times appeared merely confused, other instances indicated Webb's lack of regard for truthfulness. For example, at his deposition he claimed not to remember whether he knew about the Simmons lawsuit before he applied for the AgSmart loan. However, details elicited at the deposition and at trial, reveal he was aware of the lawsuit when he applied for the loan. He apparently discussed the lawsuit with his attorney who implied that he would stall the lawsuit so that Webb could continue farming that year. Specifically, Webb's attorney was advising him during this time frame to apply for a loan and keep farming, during which time he would file for mediation. In addition, during the deposition, he stated that he did not reveal the lawsuit to Agribank because he thought Simmons was only "coming after" the farming equipment. Webb's inconsistencies and misstatements render the debtor's testimony not credible.

lender that he was operating as an individual, but, in fact, operated the farm as a corporation, also indicates his intent to deceive the creditor. His direction that the credit at Helena Chemical Company be in the corporate name implies an understanding of his own duplicity not altered by his disavowals. Accordingly, the Court finds that the debtor had the requisite intent to deceive Agribank.

### III.

The debtor filled out an application for a loan which grossly understated his liabilities, while overstating his income and assets. This statement was actually and reasonably used by Agribank in determining that it would extend a farm operating loan to the debtor. Since the financial statements were false, and the debtor knew them to be false, the obligation owed to Agribank is not dischargeable in this bankruptcy case. Accordingly, it is

**ORDERED** that the debt pursuant to section 523(a)(2)(B) is debt is nondischargeable in this bankruptcy case. A separate judgment on the debt and dischargeability determination shall be entered.

**IT IS SO ORDERED.**

### *JUDGMENT*

This action came on for trial before the Court, Honorable Mary Davies Scott, U.S. Bankruptcy Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

**It is Ordered and Adjudged** that the debts owed to Agribank, FCB, by the defendant debtor Kevin Webb are determined nondischargeable in this bankruptcy proceeding pursuant to 11 U.S.C. § 523(a)(2)(B). It is

**Further Ordered and Adjudged** that the plaintiff Agribank, FCB recover of the defendant Kevin Webb the sum of

$54,717.76 with interest as provided by law. Fed.R.Bankr.P. 7054(b).

**It is so Ordered.**