In re David Charles BOICE and Donna Marie Boice, Debtors.

HUDSON VALLEY WATER RESOURCES, INC., Plaintiff,

v.

David Charles BOICE and Donna Marie Boice, Defendants.

Bankruptcy No. 91–30149.
Adv. No. 91–7020.

United States Bankruptcy Court, S.D. New York.

Dec. 17, 1992.

Gruner & Gruner by William M. Gruner, New Paltz, NY, for plaintiff.

Carter, Conboy, Bardwell, Case, Blackmore & Napierski, by James P. Trainor, Albany, NY, for debtors/defendants.

## DECISION ON DISCHARGEABILITY OF A DEBT [11 U.S.C. § 523(a)(2)(A) and (B)]

JEREMIAH E. BERK, Bankruptcy Judge.

Hudson Valley Water Resources, Inc. ("Plaintiff"), by complaint filed May 6, 1991, seeks a determination that a $6,360.42 debt owed by David Charles Boice and Donna Marie Boice ("Debtors" or "Defendants") is nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A) or (B) ("Code"), 11 U.S.C. § 523(a)(2)(A) or (B). Plaintiff alleges that it was induced to extend credit because Debtors falsely represented, both orally and in a written credit application, that they owned the house in which they resided.

## I. FINDINGS OF FACT

The debt which is the subject of this adversary proceeding arose out of the financed sale and installation of a water treatment system purchased by Debtors from Plaintiff. Debtors were initially solicited by Plaintiff's telemarketer on March 5, 1988. Plaintiff's telemarketers were instructed to read a script designed to determine whether the prospective purchaser was a homeowner, the principal purpose of the inquiry. (Tr. at 26.) If the prospective purchaser did not own the home where he or she resided, the telemarketer would terminate the solicitation pursuant to Plaintiff's rules. (Tr. at 26–27, 29.) On the other hand, if the prospective purchaser indicated that he or she was a homeowner, the telemarketer would then attempt to have a sales representative visit the customer at his or her residence. (Tr. at 29.)

On the evening of March 5, 1988, the same day of the initial telephone solicitation, Plaintiff's salesman visited Debtors at their residence. As a result of this visit, Debtors purchased from Plaintiff a water treatment system for $3,680.00, which Plaintiff agreed to finance in its entirety.

During this visit, four documents relating to the sale and financing of the water treatment system were executed by Debtors and the salesman. One of these documents was a Work Order and Limited Lifetime Guaranty ("Work Order"), (Plaintiff's Ex. 1.), which described the water system to be installed, installation instructions, purchase price and costs, as well as the monthly payment that Debtors were obligated to make to pay for the system. The Work Order, which was signed by both Debtors, bore the term "Home Owner" beneath each signature line.

To consummate the financing for the purchase, Debtors executed a Retail Installment Contract ("Installment Contract"), (Plaintiff's Ex. 2.), as well as a Credit Application, (Plaintiff's Ex. 3.). The Credit Application required Debtors to supply basic information concerning their employment, salaries and outstanding indebtedness. The Application also required Debtors to disclose whether they owned or rented their residence. Both Debtors indicated that they owned their home.

The fourth document prepared regarding the sale and financing of the water treatment system was a New York State and Local Sales and Use Tax Certificate of Cap-

ital Improvement ("Capital Improvement Certificate"). (Plaintiff's Ex. 4.) The Capital Improvement Certificate, signed by David Boice only, contained a statement that he was the "owner" of the real property where the system was to be installed and a certification that the work would "result in a capital improvement." *Id.* In addition to this statement, the Certificate required Mr. Boice to identify his "Title," which he stated to be "Home Owner." Directly above his signature, the Certificate contained the following declaration:

THESE STATEMENTS ARE MADE WITH THE KNOWLEDGE THAT A WILLFULLY FALSE REPRESENTATION IS A MISDEMEANOR UNDER SECTION 1145(b) OF THE NEW YORK STATE TAX LAW AND SECTION 210.45 OF THE PENAL LAW PUNISHABLE BY A FINE OF NOT MORE THAN ONE THOUSAND DOLLARS, OR IMPRISONMENT FOR NOT MORE THAN ONE YEAR, OR BOTH.

*Id.*

Plaintiff subsequently submitted the executed Retail Installment Contract and Credit Application to its financing company which agreed to finance the sales transaction on a recourse basis. (Tr. at 36.) Plaintiff's president testified that in light of the recourse nature of the financing, Plaintiff had an absolute interest in the applicants' ability to comply with the retail installment terms. *Id.* He stated that the principal criteria upon which Plaintiff relied when screening credit applications for submission to the financing company were whether the buyer was a homeowner and whether such buyer qualified financially. (Tr. at 36–37.)

Debtors failed to make any payments pursuant to the retail installment contract. Thereafter, Plaintiff paid its finance company the amount due under the contract and commenced a state court action to collect the debt from Debtors. (Plaintiff's Ex. 6.) In a counterclaim to Plaintiff's complaint, Debtors asserted that the Plaintiff had damaged the *"real property of defendants"* (Plaintiff's Ex. 7.) (emphasis added). Ultimately, the action was referred to an arbitration panel which resulted in the entry of a state court judgment against Debt-

ors in the sum of $6,360.42 on January 8, 1991. (Tr. at 24.) Thereafter, Debtors filed for relief under Chapter 7.

Notwithstanding their written statements to the contrary, Debtors did not own their residence. Plaintiff claims that it first learned of this fact after Debtors filed for bankruptcy relief. Debtors admit they supplied the information Plaintiff used to finance their purchase of the water treatment system. They contend, however, that they orally informed Plaintiff that they did not own their home. Specifically, David Boice testified that he told Plaintiff's telemarketer and salesman that neither he nor his wife owned the home. (Tr. at 76–77, 79–80, 87–88.) Although Donna Boice did not recall hearing her husband so inform the telemarketer and salesman, she testified that she had so informed the salesman herself. (Tr. at 105, 108.) Further, Mr. Boice stated that Plaintiff's salesman advised him to misrepresent the ownership of the home so that Debtors' credit application "would go through easier." (Tr. at 76; *see* Tr. at 80–81, 88–89, 101, 105–06, 109–10.)

## II. DISCUSSION

Exceptions to dischargeability are construed strictly against the creditor and liberally in favor of the debtor to accomplish bankruptcy's "fresh start" goal. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Household Fin. Corp. v. Danns (In re Danns),* 558 F.2d 114, 116 (2d Cir.1977); *Gafni v. Barton (In re Barton),* 465 F.Supp. 918, 921 (S.D.N.Y.1979); *Smith v. Meyers (In re Schwartz),* 130 B.R. 416, 421 (Bankr. S.D.N.Y.1991); *Schwalbe v. Gans (In re Gans),* 75 B.R. 474, 480–81 (Bankr.S.D.N.Y. 1987). Nevertheless, the Bankruptcy Code should be applied liberally to protect the debtor "only in those cases where there is no intent to violate its provisions." *Northern Trust Co. v. Garman (In re Garman),* 643 F.2d 1252, 1257 (7th Cir.1980), *cert. denied sub nom. Garman v. Northern Trust Co.,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981); *Chrysler Capital Corp. v. Salzman (In re Salzman),* 61 B.R. 878, 887 (Bankr.S.D.N.Y.1986). Plaintiff need prove the nondischargeability of a debt by only a preponderance of the evi-

dence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Plaintiff relies upon Code § 523(a)(2)(A) or (B) to establish that the debt is nondischargeable. Code § 523(a)(2)(A) renders a debt nondischargeable if it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" Code § 523(a)(2)(B), on the other hand, states that a debt is nondischargeable where it was obtained through the use of a written statement:

> (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive[.]

## A. DISCHARGEABILITY UNDER CODE § 523(a)(2)(A)

 To prove the nondischargeability of a debt under Code § 523(a)(2)(A), six elements must be established. First, the plaintiff must prove that money, property, services or credit was obtained by the debtor. Second, the plaintiff must establish that the debtor made the false representation. Third, the plaintiff must have relied upon the representation. Fourth, it must be established that the debtor knew or should have known that the representation was false at the time made. Fifth, the representation must have been made with the intent to deceive. Sixth, the plaintiff must have been injured by the representation. *See* 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 523.08, at 523 46–51 (15th ed. 1992) [hereinafter *"Collier"*]; *Hong Kong Dep. and Guar. Co. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 51 (S.D.N.Y. 1990); *Smith v. Meyers*, 130 B.R. at 422; *see also Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986).

Plaintiff alleges that Debtors induced it to finance their purchase of the water treatment system. Plaintiff's recourse financing arrangement qualifies under Code § 523(a)(2)(A) as "an extension . . . of credit" and therefore satisfies the first element required under this provision.

The second element of Code § 523(a)(2)(A) requires proof that the extension of credit was obtained either by false pretenses or representations, or by actual fraud committed by Debtors. Plaintiff alleges that Debtors falsely represented that they owned their residence.

Although there appear to have been at least two individuals to whom Debtors could orally have misrepresented their home ownership to Plaintiff, namely Plaintiff's telemarketer and salesman, neither of these individuals testified at trial. We have only the testimony of Plaintiff's telemarketing manager. The telemarketing manager testified that the principal information her telemarketers were instructed to obtain was whether the prospective purchasers "were homeowners." (Tr. at 26.) If informed that the purchasers were not homeowners, the telemarketers terminated the solicitation. *Id.*

David Boice, the only Debtor contacted through Plaintiff's telephone solicitation, denies stating to the telemarketer that he owned his residence. Nevertheless, based on the telemarketing manager's testimony regarding Plaintiff's telemarketing practices, we find that he did misrepresent ownership of his residence to the telemarketer. In the absence of the salesman's testimony, however, Plaintiff has not established that either Debtor misrepresented home ownership to this individual.

Notwithstanding our finding that David Boice orally misrepresented the ownership of his residence to Plaintiff's telemarketer, we are unable to find that Plaintiff established its reliance on this statement in extending credit, the requisite third element under Code § 523(a)(2)(A). Plaintiff's extension of credit was not premised on the telemarketer's solicitation but on the follow-up visit by Plaintiff's salesman and the paperwork completed by Debtors to consummate the transaction. Accordingly, Plaintiff's complaint pursuant to Code § 523(a)(2)(A) fails for lack of proof.

## B. DISCHARGEABILITY UNDER CODE § 523(a)(2)(B)

### 1. *In General*

 Plaintiff must prove five elements to establish the nondischargeability of its

claim against Debtors under Code § 523(a)(2)(B). First, there must be a writing. Second, the writing at issue must be materially false. Third, the writing must concern the debtor's financial condition. Fourth, the creditor must have reasonably relied upon the writing. And, fifth, the debtor must have caused the writing to be made or published with the intent to deceive the creditor. *John Deere Co. v. Iverson (In re Iverson)*, 66 B.R. 219, 224 (Bankr.D.Utah 1986); *Massey–Ferguson Credit Corp. v. Archer (In re Archer)*, 55 B.R. 174, 178 (Bankr.M.D.Ga.1985); *G.V. Moore Lumber Co. v. Day (In re Day)*, 54 B.R. 570, 572 (Bankr.D.Mass.1985).

### 2. *Writing*

■ To satisfy the first element under Code § 523(a)(2)(B)(i), Plaintiff must establish that Debtors obtained the extension of credit by the use of a writing. In the instant proceeding, three documents satisfy this requirement: the Credit Application, the Work Order and the Capital Improvement Certificate. Although Debtors claim that portions of the writing appearing on these documents were not completed by either of them, (*see, e.g.,* Tr. at 62–62.), Plaintiff need not prove that the writing constituting the false statement was entirely completed by Debtors. It is sufficient that Debtors either wrote, signed, or adopted such statement to find that the documents were "written" by them. *Chevy Chase Fed. Sav. Bank v. Graham (In re Graham)*, 122 B.R. 447, 451 (Bankr. M.D.Fla.1990); *see Collier* ¶ 523.09, at 523–61. Indeed, David Boice, at one point, testified that he "filled out all the papers for the water system." (Tr. at 75.) He added that he and the salesman "filled out all the papers, signed all the applications for credit and everything else." *Id.* Further, Debtors conceded that they furnished the information to Plaintiff regarding their application for credit. (Tr. at 24.)

### 3. *Materially False*

■ The "materially false" prong of Code § 523(a)(2)(B)(i) requires more than a merely erroneous or untrue written statement. *See, e.g., Municipal Credit Union v. Brown (In re Brown)*, 55 B.R. 999, 1003 (Bankr.E.D.N.Y.1986) ("The courts have differentiated between a materially false and incorrect or erroneous statement relating to a person's financial condition."); *Collier* ¶ 523.09, at 523–64. For a financial statement to qualify as being "materially false," it must be "one which paints a substantially untruthful picture of the debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *John Deere Co. v. Iverson*, 66 B.R. at 224; *Heinold Commodities & Sec., Inc. v. Hunt (In re Hunt)*, 30 B.R. 425, 440 (M.D.Tenn.1983); *IFG Leasing Co. v. Vavra (In re Harms)*, 53 B.R. 134, 140 (Bankr. D.Minn.1985); (*quoting Merchants Nat'l Bank v. Denenberg (In re Denenberg)*, 37 B.R. 267, 271 (Bankr.D.Mass.1983)). The information must not only be substantially inaccurate, but it must also be information which would have affected the creditor's decision making process. *In re Bogstad*, 779 F.2d 370, 375 (7th Cir.1985); *Heinold Commodities & Sec. v. Hunt*, 30 B.R. at 440; *John Deere Co. v. Iverson*, 66 B.R. at 224.

■ In three written statements to Plaintiff, the Work Order, Credit Application and Capital Improvement Certificate, Debtors represented that they owned their home, when in fact they did not. (Plaintiff's Ex. 2, 3, 4.) Plaintiff's president testified that Plaintiff had an absolute interest in obtaining truthful financial statements from its customers owing to the recourse nature of the financing agreement with its financing company. In addition, he stated that the purchaser's homeowner status was one of only two criteria Plaintiff utilized in accepting credit applications for submission to its financing company.

■ A misrepresentation concerning the ownership of assets is a material falsity pursuant to Code § 523(a)(2)(B)(i). *See, e.g., Scarsdale Nat'l Bank & Trust Co. v. Switzer (In re Switzer)*, 55 B.R. 991, 995 (Bankr.S.D.N.Y.1986). As one court noted, "The misrepresentation of ownership of as-

sets and the failure to divulge the true ownership interests in the listed property is 'material falsity' for purposes of Section 523(a)(2)(B)." *Bates v. Winfree (In re Winfree)*, 34 B.R. 879, 884 (Bankr. M.D.Tenn.1983) (*quoting Long Island Trust Co. v. Rodriguez (In re Rodriguez)*, 29 B.R. 537, 539 (Bankr.E.D.N.Y.1983)). The materiality of the particular misrepresentation at issue here, Debtors' ownership of their home, is thereby established. Debtors' false representation of their ownership of their home in three separate written statements to Plaintiff constituted a material misrepresentation, as Plaintiff would not have participated in the financing on a recourse basis had Debtors made truthful disclosure. (Tr. at 36–37.)

### 4. *The Writing Concerns Debtors' Financial Condition*

■ Code § 523(a)(2)(B)(ii) requires Plaintiff to establish that the subject writings concerned Debtors' financial condition. In the instant proceeding, Debtors stated in writing on three written statements to Plaintiff that they owned their home. A statement concerning the ownership of assets clearly qualifies as a statement regarding a debtor's financial condition. As the Fourth Circuit observed:

> [A] statement that one's assets are not encumbered is not a formal financial statement in the ordinary usage of the phrase. But, Congress did not speak in terms of financial statements. Instead, it referred to a much broader class of statements.... A debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition.

*Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060, 1060–61 (4th Cir.1984). Debtors' false representations in the Credit Application, the Work Order, and Capital Improvement Certificate that they owned their residence qualify as statements concerning their financial condition.

### 5. *Plaintiff Reasonably Relied Upon the False Financial Statement*

■ Code § 523(a)(2)(B)(iii) specifies that a creditor must establish two ele-

ments. Not only must the creditor demonstrate that it relied upon the false financial statement, but it also must establish that its reliance was reasonable. *Texas Am. Bank, Tyler, N.A. v. Barron (In re Barron)*, 126 B.R. 255, 259 (Bankr.E.D.Tex. 1991).

The Work Order, Credit Application and Capital Improvement Certificate taken together persuaded Plaintiff to finance the transaction. Through the uncontroverted testimony of its president, Plaintiff established that Debtors' representation of home ownership was one of two criteria it relied upon in deciding to finance Debtors' purchase of the water treatment system. In fact, Plaintiff's president testified that if Debtors had revealed that they did not own their home, Plaintiff would have refused to approve their application for financing. This is substantiated by the telemarketing manager's testimony that the main purpose of the initial phone solicitation was to determine whether a prospective purchaser owned the home in which the water treatment system was to be installed.

■ Although the term "reasonable reliance" is not defined by statute, an objective standard has developed to examine whether the creditor's reliance on a false financial statement was reasonable. *Texas Am. Bank, Tyler, N.A. v. Barron*, 126 B.R. at 259; *Management Jets Int'l, Inc. v. Mutschler (In re Mutschler)*, 45 B.R. 482, 492–93 (Bankr.D.N.D.1984). This test focuses on whether the statement is of such a nature that a reasonably prudent person would rely upon it. "Such a standard fosters a responsible and careful use of solicited financial statements and discourages the 'spurious' use of such statements which are obtained primarily with a view to the exception to discharge if the debtor defaults and declares bankruptcy." *Waterbury Community Fed. Credit Union v. Magnusson (In re Magnusson)*, 14 B.R. 662, 668–69, n. 1 (Bankr.N.D.N.Y.1981); *see Beneficial New York Inc. v. Bossard (In re Bossard)*, 74 B.R. 730, 736, n. 3 (Bankr.N.D.N.Y.1987). Even partial reli-

ance by a creditor on a false financial statement may be sufficient under Code § 523(a)(2)(B)(iii).

■ Examples of unreasonable reliance on a materially false financial statement include situations where the creditor knows or has reason to know that the financial statement is false, *see, e.g., Telco Leasing, Inc. v. Patch (In re Patch),* 24 B.R. 563 (D.Md.1982); *IGF Leasing Co. v. Harms,* 53 B.R. at 144; where the financial statement is so deficient that it fails to portray a realistic picture of the debtor's financial status, *see, e.g., Heinold Commodities & Sec., Inc. v. Hunt,* 30 B.R. at 425; *Waterbury Community Fed. Credit Union v. Magnusson,* 14 B.R. at 668; where the creditor's own investigation indicates that the financial statement may be false, *see, e.g., Heinold Commodities & Sec., Inc. v. Hunt,* 30 B.R. at 449; *Telco Leasing, Inc. v. Patch,* 24 B.R. at 567–68; or where the creditor, under certain circumstances, failed to verify the information contained in the statement, *see, e.g., In re Bogstad,* 779 F.2d 370 (7th Cir.1985).

Debtors assert that they told Plaintiff's telemarketer and salesman that they did not own their home. If we accept the truth of this assertion, then Plaintiff's reliance may be found to be unreasonable. However, we cannot reach this conclusion. First, we found that David Boice falsely represented to Plaintiff's telemarketer that he and his wife owned their home. Second, his claim that he told Plaintiff's salesman the truth regarding the ownership of the home simply lacks credibility. Mr. Boice's willingness to misrepresent the truth is evidenced in particular by his completion of the Capital Improvement Certificate. (Plaintiff's Ex. 4.) Notwithstanding the Certificate's warning that a false statement could lead to the imposition of criminal sanctions, Mr. Boice falsely executed this document in contravention of its warning. As a result, the sale of the water treatment system was not subject to state sales tax. (Plaintiff's Ex. 1.) Execution of the Certificate by David Boice, viewed in conjunction with the Work Order and Credit Application, substantiates the reason-

ableness of Plaintiff's reliance on the false representations regarding home ownership.

### 6. *Made or Published with Intent to Deceive*

■ Proving the element of deceptive intent under Code § 523(a)(2)(B)(iv) is often difficult, as one will rarely admit to such intent. *See, e.g., Management Jets Int'l Inc. v. Mutschler,* 45 B.R. at 491; *Municipal Credit Union v. Brown,* 55 B.R. at 1004 ("[I]t is virtually impossible to obtain direct proof of one's intent...."); *Citibank (S.D.),N.A. Diners Club, Inc. v. Senty (In re Senty),* 42 B.R. 456, 459 (Bankr.S.D.N.Y.1984) ("[F]ew will admit to a fraudulent intent...."). Nevertheless, the "fundamental purpose" of this element is "to assure that only the debtor who dishonestly obtains money, property, credit, or services be punished with denial of discharge, and that the honest, though mistaken, debtor be protected." *John Deere Co. v. Iverson,* 66 B.R. at 224–25; *see American Bank & Trust Co. v. Drewett (In re Drewett),* 13 B.R. 877, 880 (Bankr.E.D.Pa. 1981). "The debtor's unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts." *Collier* ¶ 523.10, at 523–71–72; *see also Hardwick Bank & Trust Co. v. Fritts (In re Fritts),* 26 B.R. 43, 46 (Bankr. E.D.Tenn.1982). Intent to deceive may be inferred when the totality of the circumstances depicts deceptive conduct by the debtor. *Hong Kong Dep. and Guar. Co. v. Shaheen,* 111 B.R. at 53 (*quoting First Serv. Corp. v. Schlickmann (In re Schlickmann),* 6 B.R. 281–282 (Bankr. D.Mass.1980)); *Town N. Nat'l Bank of Longview, Tex. v. Biedenharn (In re Biedenharn),* 30 B.R. 342, 346 (Bankr.W.D.La. 1983). To this end, Plaintiff must prove that Debtors made the statement knowing either that it was false, or that it was made with such reckless disregard of the truth so as to be the "equivalent of intent to defraud." *Town N. Nat'l Bank of Longview, Tex. v. Biedenharn,* 30 B.R. at 342, 346; *see, e.g., Driggs v. Black (In re Black),* 787 F.2d 503, 506 (10th Cir.1986); *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490, 492 (6th Cir.1986); *Texas Am. Bank, Tyler, N.A. v. Barron,* 126 B.R. at

260; *Foote & Davies v. Albanese (In re Albanese)*, 96 B.R. 376, 379–80 (Bankr. M.D.Fla.1989); *Household Fin. Corp. v. Howard (In re Howard)*, 73 B.R. 694, 702–703 (Bankr.N.D.Ind.1987); *John Deere Co. v. Iverson*, 66 B.R. at 225; *Collier* ¶ 523.09, at 523–69.

Plaintiff has established by a preponderance of the evidence under Code § 523(a)(2)(B)(iv) that David Boice executed the Work order, Retail Installment Agreement and Capital Improvement Certificate regarding his home ownership with such reckless disregard of the truth as to establish his intent to deceive.

First, David Boice knew that he did not own the residence. Where a debtor, for example, fails to comprehend the legal distinctions of ownership, *see, e.g., Barnett Bank of So. Fla. v. Gilman (In re Gilman)*, 31 B.R. 927 (Bankr.S.D.Fla.1983), or proffers a reasonable explanation, *see, e.g., In re Danesi;* 21 C.B.C. 593 (Bankr. S.D.N.Y.1979), lack of intent may be found. Here, however, David Boice knew that his statements in writing to the contrary were false. In fact, he admitted at trial that it was his understanding that this very falsity would assist in the processing of his credit application. (Tr. at 76; *see* Tr. at 80–81, 88–89, 101, 105–06, 109–10.)

Second, reckless disregard of the truth is established by a pattern of falsity. Notwithstanding his knowledge of the truth, David Boice made false statements of home ownership in not one but *three separate documents* utilized by Plaintiff to consummate the sale and financing. The recklessness of his disregard of the truth is exemplified by his willingness to execute the Capital Improvement Certificate which bore a bold warning that false statements may lead to the imposition of criminal fine and imprisonment. This pattern of falsity is further documented by the counterclaim he and his wife interposed in response to Plaintiff's state court complaint. Debtors there alleged that Plaintiff damaged the "real property of defendants."

Third, we reject David Boice's contention that Plaintiff's salesman induced him to make the false statements. A debtor's credibility is a substantial factor in determining whether a statement was made intentionally or recklessly under Code § 523(a)(2)(B)(iv). *See, e.g., California State Employees' Credit Union No. 6 v. Nelson (In re Nelson)*, 561 F.2d 1342, 1347 (9th Cir.1977); *Public Fin. Corp. of Redlands (In re Taylor)*, 514 F.2d 1370, 1373 (9th Cir.1975); *Hong Kong Dep. and Guar. Co. v. Shaheen*, 111 B.R. 48, 53 (S.D.N.Y.1990); *Texas Am. Bank, Tyler, N.A. v. Barron*, 126 B.R. at 260; *John Deere Co. v. Iverson*, 66 B.R. at 225; *Whitney Nat'l Bank v. Delano (In re Delano)*, 50 B.R. 613, 619 (Bankr.D.Mass.1985); *Merchants Nat'l Bank v. Denenberg*, 37 B.R. at 271; *Martha's Vineyard Coop. Bank v. Andrews (In re Andrews)*, 33 B.R. 970, 973 (Bankr.D.Mass.1983). During his testimony, David Boice was neither credible nor candid. Although in his answer to the instant complaint he asserted that the "owner/landlord of the premises gave the Debtors permission to install a water purification system," he offered no proof at trial to support this contention. Contrary to his testimony, the documentary evidence reveals an attempt to deceive not only Plaintiff but the taxing authority as well. Plaintiff has, accordingly, established that its claim against David Boice is nondischargeable under Code § 523(a)(2)(B).

Our finding of nondischargeability pursuant to Code § 523(a)(2)(B), however, does not apply to his co-debtor spouse, Donna Boice. Although she admitted signing the Work Order and Credit Application, which falsely indicated that she owned the residence with her husband, nothing in the evidence adduced at trial established her intent to deceive Plaintiff. For example, she testified that she was not present for most of the sales presentation on the evening of March 5, 1989. She also stated that the forms containing the false information were substantially completed before she signed the documents. (*See, e.g.,* Tr. at 104–5, 116–20, 123–25.) In fact, Donna Boice testified that she may not have understood that she was applying for financing to purchase the water treatment system. (Tr. at 125–26.) Other than signing

the Work Order and Credit Application and supplying basic credit information unrelated to the issue of the home ownership, Donna Boice did not participate in the preparation and publication of the false statements at issue in this proceeding. Absent proof of intent, Plaintiff has not established the nondischargeability of its claim against Donna Boice pursuant to Code § 523(a)(2)(B).

### III. CONCLUSIONS OF LAW

1. This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding as provided by 28 U.S.C. § 157(b)(2)(I).

2. Plaintiff has established by a preponderance of the evidence that its claim in the amount of $6,360.42 against David Boice is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

3. Plaintiff has not established by a preponderance of the evidence that its claim in the amount of $6,360.42 against David Boice is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), or that such claim is nondischargeable against Donna Boice under either 11 U.S.C. § 523(a)(2)(A) or (B).

An appropriate order shall enter in conformity herewith.