In re Seong Koo LEE and Jyung Sig Lee, Debtors.

CITIBANK (SOUTH DAKOTA) N.A., Appellant,

v.

Seong Koo LEE and Jyung Sig Lee, United States Trustee, Appellees.

BAP No. CC–94–1655–JOMe.

Bankruptcy No. LA–91–76529–SB.

Adv. No. LA–91–06419–SB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 19, 1995.

Decided Aug. 17, 1995.

Jyung Sig Lee, Los Angeles, CA, in pro. per.

Before JONES, OLLASON and MEYERS, Bankruptcy Judges.

## *OPINION*

JONES, Bankruptcy Judge:

### SUMMARY

Citibank filed a complaint to determine the dischargeability of $19,656.55 in purchases and cash advances charged by a debtor in a three week period preceding her bankruptcy filing. The debtor did not answer or appear, but the bankruptcy court refused to enter a default judgment due to a deficiency in the pleadings.

### I.  FACTS

Prior to filing bankruptcy, Jyung Sig Lee possessed a wide variety of consumer credit cards, including four different Citibank Visa revolving credit accounts. Between November 1, 1990, and January 7, 1991, the defendant made only three purchases on the Citibank accounts in the total amount of $106.29. On January 7, 1991, the combined balance on the four accounts was $1,681.22. During the 19 days between January 8, 1991, and January 26, 1991, however, Lee charged a total of $19,656.55, exhausting the credit limits on all four accounts.[1]

On January 17, 1991, Lee made payments upon three of the Citibank accounts in the sum of $74.93, $91.18, and $15.11. Thereafter she made no payment against the purchases, cash advances, or pre-existing balances.

On May 21, 1991, Lee and her husband jointly filed a chapter 7 petition.[2] On March 18, 1992, the bankruptcy court dismissed Lee's husband from the bankruptcy proceedings. According to the Statement of Affairs dated June 25, 1991, Lee had been unemployed for three months and her husband

Darvy Mack Cohan, La Jolla, CA, for appellant.

---

1. Lee's spending spree included $4,100.00 spent on jewelry, $2,000.00 spent on sporting goods, and four cash advances totaling $13,525.00.

2. Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

had been unemployed for 18 months prior to filing bankruptcy. Lee and her husband not only had no income for the two years preceding their bankruptcy filing, they had actually sustained a $40,000 loss. Finally, Lee and her husband were obligated for more than $156,000.00 on 26 other consumer credit card accounts.

On August 27, 1991, Citibank filed a complaint pursuant to 11 U.S.C. § 523(a)(2)(A) to determine the dischargeability of the $19,656.55 debt. Citibank alleged that Lee had made the $19,656.55 of purchases and cash advances in contemplation of filing bankruptcy. Citibank argued that based upon (1) the sudden change in Lee's buying habits; (2) the nature of the purchases; and (3) Lee's insolvency at the time of the charges, Citibank had established the requirements for nondischargeability under § 532(a)(2)(A). Lee and her husband failed to file an answer to the complaint and default was entered on October 23, 1991.

Citibank submitted its pleadings to prove up its default against Lee, but the bankruptcy court denied entry of default judgment. The court order denying entry of default judgment states, "THIS COURT RENDERS ITS JUDGMENT, AS FOLLOWS," followed by "Judgment is denied—no evidence to satisfy requirements of *Ward,* 857 F.2d 1082." Citibank appeals.

## II. ISSUES

Did the bankruptcy court err in denying entry of default judgment because the nondischargeability complaint did not satisfy the requirements of *Manufacturer's Hanover Trust Co. v. Ward,* 857 F.2d 1082 (6th Cir. 1988)?

## III. STANDARD OF REVIEW

■ There are no facts in dispute on appeal. The only issue on appeal—whether *Ward* is the applicable legal standard to be used in a § 523(a)(2)(A) nondischargeability action—is a question of law. We review a bankruptcy court's legal conclusions *de novo.* *In re Kirsh,* 973 F.2d 1454, 1456 (9th Cir. 1992) (per curiam).

## IV. DISCUSSION

### A. *Whether the Order Appealed From is Interlocutory*

■ An order denying default judgment is generally not a final, appealable order. *See, e.g., Grandbouche v. Clancy,* 825 F.2d 1463, 1468 (10th Cir.1987). However, the order issued by the bankruptcy court in the instant appeal clearly states "THIS COURT RENDERS ITS JUDGMENT, AS FOLLOWS," followed by language indicating that judgment is entered in favor of Jyung Sig Lee. The bottom of the order has similar language—"The Court further adjudges and orders as follows"—after which the bankruptcy court states that Citibank's request for entry of default judgment is denied. Although the order is ambiguous, we hold that Judge Bufford not only denied Citibank's request for a default judgment, but at the same time entered judgment for Lee, effectively terminating the litigation below. We therefore hold that the order is final and appealable.

### B. *The Proper Legal Standard For Proving Fraud in Credit Card Transactions*

Section 523(a)(2)(A) provides that;

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

> (2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insiders financial condition.

11 U.S.C. § 523(a)(2)(A) (1994).

■ It is well-settled that a creditor alleging *actual fraud* must prove, by a preponderance of the evidence,[3] the following five elements: (1) the debtor made a material misrepresentation, (2) with knowledge of its falsity, (3) with the intent to deceive, (4) on which the creditor justifiably relied, and (5)

---

**3.** *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

due to which the creditor sustained loss or damage. *In re Kirsh,* 973 F.2d 1454, 1457 (9th Cir.1992) (per curiam); *In re Britton,* 950 F.2d 602, 604 (9th Cir.1991); *In re Rubin,* 875 F.2d 755, 759 (9th Cir.1989).

■ Cases involving the dischargeability of credit card obligations have proved problematic because the elements of reliance and misrepresentation don't readily apply to credit card transactions. Courts which addressed this problem came up with two different solutions. One view is known as the "implied representation" theory. Under this view, each time a person uses a credit card, he makes an implied representation that he has the ability and the intention to pay for the charge.

■ The other view is known as the "assumption of the risk" theory. This theory states that a credit card company who does not conduct a credit investigation before issuing a credit card assumes the risk that the applicant will incur charges that he cannot pay for. *Ward,* 857 F.2d at 1085. Under this theory, a credit card holder can only make a false representation when the credit card issuing company has communicated a revocation to the cardholder, and the cardholder continues to use the card. *Id.* (citing *First Nat'l Bank of Mobile v. Roddenberry (In re Roddenberry),* 701 F.2d 927, 932 (11th Cir.1983) (decided under the Bankruptcy Act)).

■ The bankruptcy court in the instant appeal did not elaborate on why Citibank's pleadings were deficient, other than a cursory statement that they did not satisfy the requirements of *Manufacturer's Hanover Trust Company v. Ward,* 857 F.2d 1082 (6th Cir.1988). The court in *Ward* applied the assumption of the risk theory, holding that a credit card company may not properly rely on an applicant's credit application unless a credit check is conducted before issuing the credit card. "In cases where 'minimal investigation and verification almost certainly would have uncovered the falsity of the representations,' a bank's debt must be discharged if no such investigation had been performed." *Id.* at 1084 (citing *In re Mullet,* 817 F.2d 677, 680 (10th Cir.1987)).

In addition, the court in *Ward* held that its ruling applied even in cases where the credit card company was not alleging reliance on false information in the credit application, but was "relying" on the implied representation to pay which occurs each time a person uses a credit card. "[E]ven if each credit card charge constituted a 'representation' of ability to pay, the case law and legislative history make it clear that a credit check must be conducted at some point.…" *Ward,* 857 F.2d at 1085. The rationale in *Ward* was if reliance in credit card transactions was implied, credit card companies were in effect given preferential treatment over other unsecured creditors who had to prove reliance.

Because we disagree with the *Ward* analysis, and because it has never been adopted in the Ninth Circuit, we hold that it was error for the bankruptcy court to deny Citibank's request for a default judgment.

The BAP has declined to adopt either the assumption of the risk or the implied representation theory. *In re Dougherty,* 84 B.R. 653, 656 (9th Cir. BAP 1988). In *Dougherty* we stated that:

> We decline to adopt the implied representation theory because it implies the existence of the representation and reliance elements in the above test. This violates the principle that creditors must prove each of the elements of a dischargeability action.… Moreover, it places credit card issuers in a preferred position in proving nondischargeability vis-a-vis other creditors.

*Id.* at 656 (citations omitted).

We then rejected the assumption of the risk theory because it would provide a mechanism by which debtors with dishonest intentions could escape payment of fraudulently incurred debt through bankruptcy proceedings, *id.* at 656, thus violating the U.S. Supreme Court's instruction that bankruptcy law should provide a fresh start only to the "*honest* but unfortunate" debtor. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)) (emphasis added).

In *Dougherty* we adopted a modified version of the assumption of the risk theory,

relying on *In re Faulk,* 69 B.R. 743 (Bankr. N.D.Ind.1986) to determine the impact of such fraud on dischargeability. The *Faulk* court held that:

It [has] also been correctly held that by itself, a mere failure to fulfill a promise to pay for goods on credit is not fraudulent, so as to render a debt nondischargeable. However, when a debtor purchases goods on credit knowing he does not intend to pay for the goods or knowing he is unable to comply with the requirements of the contract, the debt may be nondischargeable.

*Id.* at 750 (citations omitted).

This intent-based analysis places the actions of the cardholder under scrutiny. In *Dougherty* we adopted *Faulk*'s non-exclusive list of factors that trial courts should use in determining actual fraud with regard to dischargeability:

1.  The length of time between the charges made and the filing of bankruptcy;

2.  Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3.  The number of charges made;

4.  The amount of the charges;

5.  The financial condition of the debtor at the time the charges were made;

6.  Whether the charges were above the credit limit of the account;

7.  Whether the debtor made multiple charges on the same day.

8.  Whether or not the debtor was employed;

9.  The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

---

4.  However, we also stated that:
    Care must be taken to stop short of a rule that would make every desperate, financially strapped debtor a guarantor of his ability to repay, on pain of nondischargeability. Such a rule would unduly expand the "actual fraud" discharge exception by attenuating the intent

*In re Dougherty,* 84 B.R. at 657 (citing *Faulk,* 69 B.R. at 757).

We recently affirmed the *Dougherty* analysis. *In re Eashai,* 167 B.R. 181, 183 (9th Cir. BAP 1994). In *Eashai* we held that a court may infer a debtor's present intent not to repay future charges when at the time the debtor incurs the charges he is insolvent and has no prospect of repayment.[4]

The record indicates that Citibank's pleadings sufficiently demonstrated that Lee's pre-bankruptcy credit card charges were fraudulent. Lee's charges were a drastic change from previous spending activity, the charges exhausted her credit limits on each card, the charges were made only a few months before bankruptcy, the charges were for luxury items and cash advances, Lee was both unemployed and insolvent, Lee failed to make the required minimum payments on the cards after her spending spree, and Lee was at that time indebted on 26 other credit accounts in excess of $150,000. Because Lee did not respond to Citibank's complaint, and because Citibank's pleadings sufficiently plead all the elements of nondischargeability under § 523(a)(2)(A), default judgment should have been entered in its favor.

## V. CONCLUSION

We hold that the bankruptcy court erred in applying *Ward* as controlling law in this circuit. The record indicates that Citibank provided ample evidence of actual fraud to support entry of a default judgment under § 523(a)(2)(A). The bankruptcy court's decision is hereby REVERSED, and the case is remanded to the bankruptcy court with instructions to enter default judgment in favor of Citibank, holding the debt of $19,656.55 nondischargeable under § 523(a)(2)(A).

MEYERS, Bankruptcy Judge, concurring:

I add my concurrence because I believe this case to be a prime example of the problems which arise from the careless use of

---

requirement. A substantial number of bankruptcy debtors incur debts with hopes of repaying them that could be considered unrealistic in hindsight. This by itself does not constitute fraudulent conduct warranting nondischarge. *Eashai,* 167 B.R. at 185 (citing *In re Karelin,* 109 B.R. 943, 947 (9th Cir. BAP 1990)).

preprinted forms. It is my belief, based upon the limited record before the Panel, that Judge Bufford did not intend to enter judgment in favor of the defendant, but rather only intended to deny plaintiff's request for a default judgment.[5] The appeal would thus have been dismissed as interlocutory.

Unfortunately, it appears that counsel for the plaintiff improperly completed the default judgment form. At the line reading "Judgment shall be entered in favor of Plaintiff (specify name):", counsel for the plaintiff inserted the name of the defendant "JYUNG SIG LEE"! Due to counsel's inadvertence, the Panel is compelled to find that Judge Bufford not only denied the request for default but also entered judgment in favor of Lee.

In a district with a great volume of cases, such as the Central District of California, forms can serve as a useful aide in processing common requests such as the entry of default. Counsel should be careful, however, not only to use the proper form, but also to use the form properly.

Having reluctantly concluded that this appeal is ripe for review, I concur fully with the opinion filed which reverses the "judgment" filed by the trial court.

---

**5.** Had counsel for the plaintiff moved for reconsideration it would have given Judge Bufford an opportunity to clarify his ruling and provide the Panel with a more complete record.