In re Michael OWEN, Kimberly Owen, Debtors.

Universal Bank, N.A., Plaintiff,

v.

Michael Owen, Defendant.

Bankruptcy No. 98–21676.
Adversary No. 98–2108.

United States Bankruptcy Court,
D. Connecticut.

Feb. 17, 1999.

Andrew K. Brotmann, Brotmann & Freedman, Stamford, CT, for plaintiff.

Michael Owen, New Milford, CT, defendant pro se.

### RULING DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

#### I.

The matter before the court is a plaintiff's entitlement to a default judgment where the defendant does not appear. Universal Bank, N.A. ("UBNA"), formerly known as AT & T Universal Card Services Corp., on July 23, 1998, filed a complaint against Michael Owen, a Chapter 7 debtor ("the debtor"), contending a credit card

debt of $3,558.28 was not dischargeable pursuant Bankruptcy Code § 523(a)(2). The complaint contains allegations clarifying that UBNA relied on § 523(a)(2)(A) (debt not discharged "to the extent obtained by (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."). When the debtor failed to respond to the complaint and to attend a pretrial, the clerk of the court, on September 17, 1998 and at UBNA's request, entered a default.

 UBNA, on January 4, 1999, filed a motion for a default judgment and the court set the motion for hearing for January 19, 1999.[1] On that date, UBNA, by counsel, appeared, and the court held a brief hearing at which Andrew K. Brotmann, Esq., UBNA's attorney, testified.[2] The following findings of fact are based upon that testimony and UBNA's pleadings, accepted as true.

### II.

The debtor and his wife (together "the debtors") filed a joint Chapter 7 petition on April 20, 1998. The debtors received their discharge on August 12, 1998.

The debtor opened the account at issue in 1990, but did not actually use it until 1996. On December 1, 1997, the debtor informed UBNA, by telephone, that he and his wife were divorcing. He stated that the two credit cards originally issued to him and his wife had been destroyed and he requested that UBNA delete his wife from the account and reissue one card to him. At that time, the account showed a credit balance of $0.67. He provided UBNA with updated information regarding his address and employment. UBNA's records show that the debtor was a truck driver who was on the road at times. UBNA sent him the new card with a credit limit of $4,100. Over the next two months, from December 7, 1997 to January 24, 1998, the debtor charged eighteen purchases to the account and took one cash advance for $400, totaling $3,268.64. The purchases were from various sources, including a supermarket, a home furnishings store, a clothing store, an office supply store and a motel. The debtor made no payments on the account after December 1, 1997. The total amount due, including accrued interest, as of April 20, 1998, the date on which the chapter 7 bankruptcy petition was filed, was $3,558.28. UBNA's telephone log discloses several calls to the debtor in late 1996 regarding an overdue amount that the debtor subsequently paid.

The debtor's schedules disclosed that his income exceeded his expenses by about

---

1. Fed.R.Civ.P. 55(b), made applicable in bankruptcy proceedings by Fed.R.Bankr.P. 7055, provides in relevant part:
 Judgment by default may be entered as follows: ... If the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or carry it into effect, it is necessary to ... establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings ... as it deems necessary and proper....
 Fed.R.Civ.P. 55(b).
 In the Second Circuit, the rule is "for the purposes of Rule 55 ... a debtor named as a defendant in an adversary proceeding in his own bankruptcy case is always deemed to have 'appeared' in the adversary proceeding so as to require notice of a motion for a default judgment." *Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 867 (2nd Cir. BAP 1997).

2. "Entry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Valley Oak Credit Union v. Villegas (In re Villegas)*, 132 B.R. 742, 746 (9th Cir. BAP 1991). "The general rule is that upon default, factual allegations of a complaint will be taken as true." *Villegas* at 746 n. 5. "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (1998).

$60 per month, and that the debtor had additional debt of approximately $5,000 for which he alone was liable and $9,000 for which he was jointly liable with his wife.

UBNA argues that taking all pleaded facts as true, UBNA had established that the debtor's credit card obligation to it is nondischargeable because of the debtor's fraud. UBNA emphasizes that "[w]hen viewing the totality of circumstances in this matter, [it] is clear that these charges were incurred at a time when [the debtor] could not realistically have expected that he would be able to repay them. They appear to be, at least in part, luxury items." (UBNA Memorandum in Support of Motion for Default Judgment at 3.)

## III.

■ This court has previously enunciated the legal principles involved in determining the dischargeability of credit card debt in a published ruling involving this same plaintiff:

> Under § 523(a)(2)(A), a debt may be determined nondischargeable based on fraud where the creditor proves that: (1) the debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made. The level of reliance is justifiable reliance. The burden of proof on the creditor is to prove each element of the statute by a preponderance of the evidence. Further, exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code. To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which

may exist without imputation of bad faith or immorality) is insufficient. The question of how to deal with "representations" that credit card holders make when they incur credit card charges has engendered substantial comment in recent court decisions. In general, courts hold credit card debts to be dischargeable absent a determination that the debtor did not intend to repay the charges when they were incurred.

*AT & T Universal Card Services Corp. v. Williams (In re Williams)*, 214 B.R. 433, 435 (Bankr.D.Conn.1997). (Internal quotation marks and citations omitted.)

■ While the Second Circuit has not as yet indicated its approval of the "totality of the circumstances" theory applied by the Ninth Circuit Bankruptcy Appellate Panel ("BAP") in the decisions relied on by UBNA,[3] this court will use it in this matter. The factors considered under such an approach may provide sufficient circumstantial evidence for a court to infer that a debtor intended, at the time the debt was incurred, not to pay it. The totality of the circumstances theory looks to a nonexclusive list of twelve factors in determining a debtor's intent: (1) the length of time between when charges were incurred and when bankruptcy was filed; (2) whether an attorney was consulted concerning bankruptcy before the charges were incurred; (3) number of charges; (4) amount of charges; (5) financial condition of debtor; (6) whether the charges exceeded the credit limit; (7) whether there were multiple charges on the same day; (8) whether the debtor was employed; (9) debtor's prospects for employment; (10) financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases were for luxuries or necessities. *Citibank South Dakota N.A. v. Dougherty (In re Dougherty )* 84 B.R. 653 (9th Cir. BAP 1988).

---

**3.** *See Villegas,* 132 B.R. 742; *AT & T Universal Card Services v. Black (In re Black),* 222 B.R. 896 (9th Cir. BAP 1998); *Citibank*

*(South Dakota) N.A. v. Lee (In re Lee),* 186 B.R. 695 (9th Cir. BAP 1995).

Although UBNA cites *In re Black*, 222 B.R. 896, as supporting its contentions, it is inapposite to any of the issues of this proceeding. Without discussing the facts, *Black* simply held that where the BAP had previously[4] remanded a proceeding to the bankruptcy court for entry of a default judgment for the creditor, the bankruptcy court did not then have the discretion to hold another hearing and enter judgment for the debtor.

UBNA principally relies on *In re Lee*, 186 B.R. 695, contending that the facts of the present proceeding are similar to those in *Lee.* The Ninth Circuit BAP, in *Lee*, held that the facts presented were sufficient to support a default judgment under § 523(a)(2)(A) for the creditor. In *Lee*, the debtors had already incurred debt in excess of $150,000 on 26 other credit cards, when the $20,000 debt, exhausting the credit limits of the four cards issued by Citibank, was incurred, primarily to provide cash advances and to purchase jewelry. The debtors in *Lee* were unemployed and had had no income for the preceding two years.

■■■■ The court finds that UBNA's reliance on *Lee* is misplaced. In the present proceeding, the debtor was employed at all relevant times.[5] There was no evidence that the debtor was insolvent when the debts were incurred, and they were well within the credit limit of $4,100. No evidence was presented to indicate that the charges shown—for purchases at a supermarket, office supply store, home furnishings store and clothing store, among others—were for luxury items. Although, in the months preceding bankruptcy the debtor's use of the credit card increased and he did not make payments, that alone does not provide sufficient proof that he intended to defraud UBNA. The debtor also had had an outstanding balance for several months in 1996, but subsequently repaid the full amount. There was also a three month gap between incurring the charges and the filing of the bankruptcy petition, suggesting no intent to evade payment by a bankruptcy filing. In *Lee*, the Ninth Circuit BAP included a cautionary note that:

> Care must be taken to stop short of a rule that would make every desperate, financially strapped debtor a guarantor of his ability to repay, on pain of nondischargeability. Such a rule would unduly expand the "actual fraud" discharge exception by attenuating the intent requirement. A substantial number of bankruptcy debtors incur debts with hopes of repaying them that could be considered unrealistic in hindsight. This by itself does not constitute fraudulent conduct warranting nondischarge.

*Lee* at 699 n. 4 (citations omitted).

The court finds that the facts presented establish only that the debtor was having some financial difficulties; there was nothing about the nature or timing of the charges incurred to indicate an intent not to repay. UBNA's own records indicate that the debtor was involved in a divorce and had moved to a new address at the time the charges were incurred. Those records also indicated that the debtor was sometimes away from home as a result of his employment as a truck driver. Under these circumstances, the court cannot conclude that charges for household furnishings, a motel room, groceries, office supplies and clothing were likely to have been for luxuries rather than for necessities.

### IV.

The court concludes that the facts presented by UBNA fail to substantiate its contention that, at the time the debts were incurred, the debtor knew he would not be able to repay them and UBNA is accordingly not entitled to entry of a default

---

**4.** The previous BAP decision, as well as both bankruptcy court decisions, were unpublished.

**5.** The debtors' statement of financial affairs discloses that they earned $53,000 in 1996 and $55,000 in 1997.

judgment. An order will enter denying UBNA's motion for a default judgment and determining that the debt of the debtor to UBNA is discharged. It is

SO ORDERED.