**In re Mohammad N. KAHN, Debtor.**

**American Express, Plaintiff,**

**v.**

**Mohammad N. Kahn, Defendant.**

**Citibank, Plaintiff,**

**v.**

**Mohammad N. Kahn, Defendant.**

**Bankruptcy No. 98–51251.**
**Adversary Nos. 98–5090, 98–5091.**

United States Bankruptcy Court,
D. Connecticut,
Bridgeport Division.

April 20, 2001.

2. It is noted that each actually signed the    Addendum on April 11, 2001.

Russell L. London, London & London, Kensington, CT, for plaintiffs American Express and Citibank.

William C. Bieluch, Jr., Darien, CT, for defendant Mohammad N. Kahn.

## MEMORANDUM AND ORDER ON DISCHARGEABILITY OF CREDIT CARD DEBTS

ALAN H. W. SHIFF, Chief Judge.

The plaintiff credit card issuers seek a determination that the debtor-defendant Mohammad N. Kahn's debts to them should be excepted from discharge. *See* 11 U.S.C. §§ 523(a)(2)(A) and (C). With the consent of the parties, the above captioned adversary proceedings were consolidated for trial. The defendant called no witnesses and offered no exhibits. *See* Tr. 1 at 2b and infra, n. 6.[1]

### BACKGROUND

The defendant filed a chapter 7 petition on June 27, 1998. The defendant worked full time at a gasoline station from 1987 until September, 1997. At the time his job terminated, he was earning $6.50 per hour. *See* Tr. 1 at 56, 80. He testified that at most he had earned $700 a week during that time. In December, 1997, he accepted a $7.00 per hour part time job at another gas station. The defendant's financial statements, which accompanied his bankruptcy petition, disclose that he earned $11,000 in 1997 and $2,400 in 1998. *Id.* at 68–69; Exh. B. He testified that by March of 1988, he had less than $1,000 in savings. Tr. 2 at 115. By 1998, the defendant had more than 20 credit cards, Tr. 1 at 86–87, including the cards issued by the plaintiffs.

1. Transcripts 1 and 2 refer to the trial dates of August 2 and 3, 2000, and are docketed as 23 and 22 respectively.

American Express issued a credit card in 1993 with a credit limit of $5,000.00. *See* Exh. J. The defendant did not use the American Express card until 1997. During that year he charged $25.00. Tr. 2 at 139. His balance as of March 21, 1998 was $25.00.

Citibank issued a credit card in 1996 with a credit limit of $2,500.00. The defendant maintained a zero balance on that card between June and December, 1997. *See* Exh. C. Prior to his June, 1998 Citibank card statement, the defendant's outstanding balance was $64.22. Tr. 1 at 14. As noted, on June 27, 1998, the defendant commenced this chapter 7 case. Shortly before that date, the defendant's use of the plaintiffs' credit cards increased dramatically.

With respect to the Citibank card, on May 30, 1998, the defendant obtained an $800.00 cash advance at an automatic teller machine ("ATM") at the Mohegan Sun [gambling] Casino. Tr. 1 at 53–54. On June 1, 1998, the defendant used that card to charge $1491.68 at New York Dragon Jewelry. *Id.* at 14, 53. He explained that he had purchased "some jewelry and a necklace ... to give to my wife." Tr. 1 at 53. The defendant's June 1998 statement reflected an ending balance of $2,455.56. *Id.* at 16. When asked how he expected to repay his debt to Citibank, the defendant responded that he was looking for a job. *Id.* at 56, Tr. 2 at 110.

With respect to the American Express card, on May 29, 1998, the defendant purchased one or more printers for $890.38 from Staples office supply. Tr. 1 at 85. On June 4, he used it for two charges in the amounts of $1,710.00 and $215 from Meena Jeweler's. *Id.* at 77. On June 6, he used the card to purchase a $703.59 VCR from PC Richard and Son. *Id.* at 87–88.[2] The defendant's credit card balance increased from $25.00 to over $5,000 between March 21 and the middle of June, 1998. Tr. 2 at 140. His ending balance at the time of the petition was $5,805.25. *Id.* at 146.

The schedules attached to the defendant's bankruptcy petition disclosed an unsecured debt in the amount of $77,109.00, including a $5,193.02 credit card debt owed to American Express and a $2,455.54 credit card debt owed to Citibank. On October 5, 1998, American Express and Citibank commenced these adversary proceedings.

## DISCUSSION

■ Section 523(a)(2)(C) provides that "consumer debts owed to a single creditor and aggregating more than $1,075 for 'luxury goods or services' incurred by an individual debtor on or within 60 days before the order for relief under this title ... are presumed to be nondischargeable." There is no such presumption under § 523(a)(2)(A), which provides that a debt is not discharged unless it is determined that the debtor obtained credit by "false pretenses, a false representation or actual fraud."

■ In order to prove fraud under § 523(a)(2)(A), a creditor must prove by a fair preponderance of the evidence that a debtor made a false representation; the debtor knew the representation was false when it was made; the representation was made with the intent of deceiving or inducing a creditor to act to its detriment; and

---

**2.** The defendant claimed in his answer to plaintiff American Express' interrogatories that those items "were reasonably necessary for support and maintenance." H at ¶ 24. The defendant testified that he sold the VCR to pay his rent and the printers on a trip to Pakistan in order to provide cash to his family, and that his wife sold the jewelry to pay her medical bills. Tr. 1 at 77, 87–89.

the creditor acted in reliance upon the representation to its detriment. *Field v. Mans*, 516 U.S. 59, 76, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (differentiating between sections 523(a)(2)(A) and (B)); *Bethpage Federal Credit Union v. Furio (In re Furio)*, 77 F.3d 622, 623 (2nd Cir.1996); *In re Barnett*, 115 B.R. 22, 24 (Bankr.D.Conn. 1990). A debt is excepted from discharge where it has been incurred by a debtor who knew at the time that there were neither current nor realistically foreseeable resources for repayment. *See Citibank (South Dakota) N.A. v. Lee (In re Lee)*, 186 B.R. 695, 699 (9th Cir. BAP 1995); *Hudson Valley Water Resources, Inc. v. Boice (In re Boice)*, 149 B.R. 40, 47 (Bankr.S.D.N.Y.1992) (a "debtor's unsupported assertions of an honest intent will not overcome the natural inferences of the facts.").

*False representation*

■ In credit card dischargeability proceedings, as here, a false representation occurs when a debtor deceitfully signs a credit card receipt which affirms a promise to repay in accordance with the terms of the agreement. Here, the defendant's prospects for repaying the relevant prepetition debts on the plaintiffs' cards when he used them were unrealistic if not impossible. As noted, he earned $11,000 in 1997 and $2,400 in 1998. He estimated at his deposition and at trial that he had probably lost more than $100,000 at casinos, and most of that was after December, 1997. *See* Tr. 1 at 63, 66, 70. His explanation

was that "... this time I'm going to win money, and every time I went, I lost, so ...." *Id.* at 66–67; Exh. F at 65.[3] More to the point, the defendant admitted that at all relevant pre-petition times when he used his Citibank and American Express credit cards and signed a credit card receipt, his signature constituted a promise to repay, yet he could not afford to pay for the item he charged or even make the minimum monthly payment required by the credit card agreements. Tr. 1 at 79–80; Tr. 2 at 109 and 115. He also conceded that he used credit from one account to pay the minimum balance on another, *Id.* at 82, although he later stated that he only used "one credit card check, I never use all," in the amount of $3,000. Tr. 2 at 119–120; Exh. F at 29 and 53. In all, the defendant accumulated new credit card debt on all of his credit cards, including those issued by these plaintiffs, of more than $35,000 in the six month period from January to June, 1998, Tr. 2 at 108, which supports the conclusion that the defendant was grossly over extended.

The defendant's expressed desire to repay his credit card debts in the hope that he would find a job or win money at a gambling casino was therefore unrealistic and incredible, given the acceleration of his accumulation of those debts in the three month period that preceded the filing of his chapter 7 petition.

*Intent to deceive/inducing creditor to act to its detriment*

■ The well-settled meaning of fraud "require[s] a misrepresentation or conceal-

---

**3.** His testimony that he used his own savings of $40,000 to $50,000, see *Id.* at 69 and 81, rather than credit card debt, to finance his gambling, is, on the basis of his debt-to-income ratio, simply not credible, even assuming that his ability to save reached that magnitude. *See* Tr. 2 at 125. The defendant testified that, other than his tax returns and a single credit card receipt, he destroyed all of his financial records. See Tr. 2 at 117–118;

Exh. F at 66–67; Exh. H at ¶¶ 8, 13–18, 22–24. Even though this motion is not brought under § 727, a debtor's duty to preserve his or her financial records prior to filing a bankruptcy petition is a codified expectation that people contemplating bankruptcy should keep in mind. *See, e.g., In re Senese*, 245 B.R. 565, 576 (Bankr.N.D.Ill.2000) (denying discharge on that basis).

ment of material fact." *Neder v. United States*, 527 U.S. 1, 22, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). *See also Citibank v. Davis (In re Davis)*, 176 B.R. 118, 120–121 ("although credit card issuers may assume many risks, they do not assume the risk of actual fraud... which requires intent either not to pay or in some fashion to deceive a creditor."), *cited in In re Furio*, *supra*, 77 F.3d at 624. The gravamen of this element of the fraud test is that the signature on the credit card receipt is an affirmation that the required minimum monthly payment can be made *and* also that the entire debt can be paid on the basis of the card holder's resources or reasonably anticipated resources. All of the credible evidence supports the conclusion that such a payment could not be made and that the defendant's signature was intended to induce the plaintiffs to extend credit.

*Reliance*

██ A creditor who seeks to bar a discharge pursuant to 523(a)(2)(A) need only prove its actual reliance. *Mechanics and Farmers Savings Bank v. Fosco (In re Fosco)*, 14 B.R. 918, 921 (Bankr.D.Conn. 1981). *See also Field v. Mans*, *supra*, 516 U.S. at 73–5, 116 S.Ct. 437. (holding that § 523(a)(2)(A) "requires justifiable, but not reasonable, reliance."). The plaintiffs' approval of each credit card transaction, is sufficient evidence of reliance.

The plaintiffs have established a *prima facie* case of fraud which, as noted, the defendant did not rebut by the production of any evidence other than through the cross examination of the plaintiffs' witnesses. That attempt was not remotely persuasive. *In re Lee*, *supra*, 186 B.R. 695, 699 (9th Cir. BAP 1995).[4]

Accordingly, the credit card debts owed to the plaintiffs are excepted from discharge judgment shall enter in favor of the plaintiffs, and

IT IS SO ORDERED.

---

4. It is therefore not necessary to consider whether the plaintiffs also prevail under § 523(a)(2)(C).